No. 79-58

IN THE SURPEME COURT OF THE STATE OF MONTANA

1980

---

CARRIE M. MORRELL, previously known
as CARRIE M. GIESICK,

                    Petitioner and Appellant,

        vs.

ROBERT LEE GIESICK,

                    Respondent and Respondent.

---

Appeal from:  District Court of the Sixteenth Judicial District,
              In and for the County of Rosebud.
              Honorable A. B. Martin, Judge presiding.

Counsel of Record:

    For Appellant:

        Phyllis A. Bock, argued, Montana Legal Services, Miles
          City, Montana

    For Respondent:

        John S Forsythe argued, Forsyth, Montana

---

                        Submitted:  April 15, 1980

                          Decided:  MAY 14 1980

Filed: MAY 14 1980

_Thomas J. Kearney_
                                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Carrie M. Morrell appeals from a summary judgment entered in favor of Robert Lee Giesick. The judgment, entered by the District Court, Sixteenth Judicial District, Rosebud County, precluded Morrell from challenging Giesick's custody of Morrell's child, Sandy Joe Giesick.

Sandy Joe was born on July 21, 1974. Morrell is listed on Sandy Joe's birth certificate as the mother but no father is named. Sandy Joe's surname on the birth certificate was Baertsch, Morrell's maiden name. According to Giesick, he and Morrell were living together and having sexual intercourse at the time Sandy Joe was conceived. Morrell, however, maintains she had not even met Giesick at the time Sandy Joe was conceived and Morrell was dating and having sexual intercourse exclusively with Darrell Canfield. Canfield did contribute $360 towards the medical expenses associated with Sandy Joe's delivery.

On Thanksgiving 1974, Morrell told Giesick he was not Sandy Joe's natural father. Morrell told Giesick this again in July 1975 and repeated it numerous times thereafter.

In December 1974, Morrell and Giesick were married in Sheridan, Wyoming. Giesick took Sandy Joe into his home, openly held her out as his natural child and allowed her to use his surname.

At some point, Morrell signed a "Consent To Custody And Guardianship" transferring Sandy Joe's custody and control to Morrell's parents, George and Dorothy Baertsch. In November 1975, Morrell and Giesick jointly petitioned for a writ of habeas corpus to secure Sandy Joe's return from Morrell's parents. The petition recited that Morrell and

Giesick were Sandy Joe's natural parents. Subsequently, Morrell's parents voluntarily returned Sandy Joe, and the petition was dismissed.

Morrell and Giesick separated several times during their marriage. The last separation occurred in May 1976, when Morrell took the children, Sandy Joe and Amy Marie Giesick, to Oklahoma. In late December 1976, the children were returned to Montana and put into Giesick's custody. The children have lived in Montana with Giesick and his second wife since that time.

On March 24, 1977, Giesick obtained a dissolution of his marriage with Morrell in the District Court, Rosebud County. Morrell was served by publication. Giesick was given custody of Sandy Joe and Amy Marie under the default judgment entered by the District Court. No issue has been raised here regarding the propriety of the marriage dissolution itself.

On March 29, 1979, Morrell filed this petition to set aside the child custody provision in the default marriage dissolution decree. The petition alleged Giesick possibly committed a fraud upon the District Court by alleging in the dissolution petition that Sandy Joe was "born of the marriage." The petition also alleged the District Court lacked jurisdiction to award Giesick custody of Sandy Joe since Morrell was served by publication.

Giesick moved for summary judgment which was granted on September 26, 1979. The District Court held the dissolution court had jurisdiction to award Giesick custody of the children since the children were in Montana at the time the dissolution petition was filed and there was no irregularity in service of process. Next, the District Court held Morrell

was barred by estoppel, laches and res judicata from challenging the dissolution decree's custody provision.

Upon appeal, Morrell challenges the propriety of the summary judgment itself as well as the jurisdiction of the District Court to determine Sandy Joe's custody. We affirm the District Court.

According to Morrell, genuine issues of material fact remain unresolved, and Giesick was not entitled to a judgment as a matter of law. The contention is without merit. Morrell admits Giesick took Sandy Joe into his home, openly held her out as his natural child, and allowed her to use his surname. Morrell also admits her representation in the 1975 petition for a writ of habeas corpus that Giesick is Sandy Joe's natural father. Moreover, Morrell admits she has acquiesced for almost five years in Giesick's being Sandy Joe's natural father. Certainly, Giesick has changed his position in reliance on Morrell's representations and long acquiescence. Therefore, having admitted the necessary elements, Morrell is estopped from asserting Giesick is not Sandy Joe's natural father.

Morrell is also barred by laches from asserting Giesick is not Sandy Joe's natural father. Morrell claims to have known for over five years that Giesick is not Sandy Joe's natural father. Yet, Morrell waited for over three years after Giesick was awarded Sandy Joe's custody to bring a petition for modification. During this period, Sandy Joe has undoubtedly become an integral part of the Giesick family.

Finally, Morrell is barred by res judicata from asserting that Giesick is not Sandy Joe's natural parent. The record demonstrates Morrell was validly served by publica-

tion and in fact had notice of the proceedings. Thus, Morrell had her opportunity to challenge Giesick's paternity of Sandy Joe, yet she failed to appear.

Morrell next contends Sandy Joe's custody could not constitutionally be determined without personal jurisdiction over Morrell. Morrell asserts her due process rights have been violated. This contention also has no merit.

Morrell's contentions are based on a misreading of May v. Anderson (1953), 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221. While the language of this opinion is very broad, most courts interpreting the decision have limited the holding to where both the child and the defending parent are not in the rendering state at the time of the custody proceeding. See, e.g., Worland v. Worland (N.M. 1976), 551 P.2d 981, and Bush v. Bush (Okl. 1956), 299 P.2d 155. The Supreme Court decision itself indicates this is the proper interpretation. May v. Anderson, supra, 345 U.S. at 534 n. 8.

Limiting the effect of the May decision in this manner also makes good sense. Otherwise, the convenience of a leave-taking parent is placed above the welfare of the child. The situation becomes such that one state cannot bind the father and another state cannot bind the mother. Possession becomes not merely nine-tenths of the law but all of the law. Self-help becomes the ultimate remedy, and the law of custody is reduced to a rule of seize and run. Batchelor v. Fulcher (Ky. 1967), 415 S.W.2d 828, 832-33 (Osborne, J., dissenting).

Morrell finally contends the custody provision in the dissolution decree is void since Sandy Joe is not Giesick's natural child and there has not been a proper showing of child abuse, neglect or dependency. As noted above, Morrell

is barred by estoppel, laches and <u>res</u> <u>judicata</u> from asserting Giesick is not Sandy Joe's natural parent.

Having found no error, the judgment of the District Court is affirmed.


_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices