**Michael A. WRIGHT, Appellant,**

**v.**

**Robyn L. (Wright) BLACK, Appellee.**

**S–5062.**

Supreme Court of Alaska.

July 23, 1993.

Patrick J. McKay, Law Offices of Patrick J. McKay, Anchorage, for appellant.

Johnny O. Gibbons, Dickerson & Gibbons, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

### OPINION

COMPTON, Justice.

Michael Wright claims he was given inadequate notice that Divorce Master Andrew M. Brown would consider his motion for paternity testing at a hearing regarding Robyn (Wright) Black's motion to modify child support. He claims that this inadequacy of notice violated his constitutional right to due process of law. He further claims that Master Brown's recommendation, approved by Superior Court Judge John Reese, that he be estopped from denying paternity, and Judge Reese's denial of his motion for reconsideration, constitute error. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

During Michael and Robyn's marriage, Robyn had two children, Devon and Damon. When Damon was born in 1988 Michael and Robyn doubted whether Michael was Damon's father. Nevertheless, Michael was listed as Damon's father on the birth certificate and in Michael and Robyn's dissolution of marriage petition. Damon was two months old when Michael and Robyn separated.

Michael and Robyn's marriage was dissolved in February 1991. Michael agreed to pay Robyn $600 per month for the support of both children. At that time, Damon was becoming deaf and was experiencing a problem with his balance. Damon has since been diagnosed as having Leukodystrophy, a brain disease.

Robyn moved to modify child support or to receive an increase in medical coverage. A hearing on Robyn's motion was scheduled for December 2, 1991. The Wrights were also ordered to be prepared to address visitation issues.

Michael then moved for a paternity test and for a modification of the child custody, visitation and support decree. He requested that should the tests prove that he was not Damon's father, the court modify the dissolution agreement as to Damon. Robyn filed an opposition December 2.

At the December 2 hearing, Master Brown announced that he would address Michael's motion for paternity testing at that time. Neither Michael nor Robyn was represented by counsel, and neither objected to resolving the paternity issue.

Master Brown found by a preponderance of evidence:

(1) that the parties knew either before, at or shortly after Damon's birth of the possibility that Mr. Wright may not have been the father, (2) that they knew of the possibility of paternity testing but did not do it, (3) that Mr. Wright held himself out to Damon and others as Damon's father, (4) that both parties voluntarilly [sic] and knowingly entered into the Petition for Dissolution of Marriage specifying that Damon was a child of the marriage with Mr. Wright having specific rights and responsibilities as to both children, (5) that they both so testified at the dissolution hearing and (6) that Mr. Wright is the one whom Damon knows and looks toward as his father.

Master Brown's report recommended that Michael's conduct estop him from challenging his paternity of Damon. The report recommended that the parties' dissolution decree be amended to make Michael responsible for two-thirds and Robyn one-third of Damon's non-insured medical expenses. Judge Reese approved the Mas-

ter's report, denied Michael's motion for paternity testing, and amended the dissolution decree in accordance with the report.

Judge Reese denied Michael's motion for reconsideration regarding the paternity issue.[1] Michael appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ A constitutional issue presents a question of law, which we review *de novo*. Therefore, we will apply our independent judgment. *Arco Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992).

■ Whether the superior court has the power to apply the doctrine of equitable estoppel to cases where a father denies paternity is also a question of law. "On questions of law, this court is not bound by the lower court's decision; ... Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

■ Whether an estoppel exists is generally a question of fact.[2] *State Compensation Ins. Fund v. Workers' Compensation Appeals Bd.*, 40 Cal.3d 5, 219 Cal. Rptr. 13, 20, 706 P.2d 1146, 1153 (1985); 31 C.J.S. *Estoppel* § 163. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Alaska Civil Rule 52(a).

### B. MICHAEL'S DUE PROCESS RIGHTS

■ Michael claims he had no notice that Master Brown would resolve the paternity issue at the December 2 hearing. He claims this lack of notice constituted a vio-

---

1. Michael also appeals the denial of his motion for reconsideration, which claimed that he did not have adequate time to prepare for a hearing on the paternity issue. Since his appeal raises the same issue, we do not need to address denial of his motion for reconsideration.

2. Estoppel becomes a question of law when the facts are clearly established. *American Falls Canal Sec. Co. v. American Sav. and Loan Ass'n*, 775 P.2d 412, 415 (Utah 1989); 31 C.J.S. *Estoppel* § 163.

lation of his right to procedural due process of law under the Alaska Constitution.[3]

In response, Robyn notes that Michael failed to object, even after Master Brown asked if Michael or Robyn had any problems with taking testimony on the paternity issue. She argues that since Michael testified regarding the paternity issue and had the opportunity to cross-examine her, he received all process to which he was due.

■ Procedural due process under the Alaska Constitution requires "notice and opportunity for hearing appropriate to the nature of the case." *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974) (quoting *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). In *Carvalho v. Carvalho*, 838 P.2d 259 (Alaska 1992), we held that the trial court erred in refusing to allow a party to testify at a hearing regarding his child support arrearage. *Id.* at 263. *Carvalho* is not apposite, however, since both Michael and Robyn testified and were available for cross-examination.

In *Cushing v. Painter*, 666 P.2d 1044 (Alaska 1983), we held that the superior court violated a party's due process rights when it decided the question of permanent custody after an "interim hearing," held for the limited purpose of determining custody for the upcoming school year. *Id.* at 1046. In *Cushing* the parties did not know until after the hearing that permanent custody would be decided. In this case the Wrights had notice at the hearing that the question of paternity testing would be addressed. Arguably, this notice still may not have been constitutionally sufficient. An announcement at the beginning of the hearing may have been little better than no notice at all. Michael had no time to prepare a presentation or an argument on the paternity issue.

Assuming that Master Brown's decision to determine the paternity issue violated

due process, we conclude that Michael waived his right to object. Michael did not object when Master Brown announced at the beginning of the hearing that he would resolve the paternity issue, when he asked if anyone had a problem with his taking testimony on both issues, or when he directed his questions to the paternity issue. "By consenting to certain procedures or by failing to object to others, a party may waive those rights which are arguably encompassed within due process guarantees." *In re C.L.T.*, 597 P.2d 518, 522 (Alaska 1979).

■ Michael contends that his failure to object timely at the hearing should be excused because he was not represented by counsel. This court may relax certain procedural requirements in view of a litigant's *pro se* status. *Smith v. Sampson*, 816 P.2d 902, 906 (Alaska 1991) (considering issues not raised in *pro se* litigant's statement of points on appeal); *see also Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) ("the pleadings of *pro se* litigants should be held to less stringent standards than those of lawyers"). However, "[c]ourts should not save a litigant from his choice of lawyer, including when a litigant chooses himself as legal representative." *Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989). This court has declined "to require judges to warn pro se litigants on aspects of procedure when the pro se litigant has failed to at least file a defective pleading." *Id.*

If Michael had attempted to object, or even hinted that he was unprepared to handle the paternity issue, then *Breck* might apply. While we may relax *formal* requirements for *pro se* litigants, even a *pro se* litigant must make some attempt to assert his or her rights.

## C. ESTOPPEL FROM DENIAL OF PATERNITY

■ We have considered the application of equitable estoppel to those who would deny paternity. *H.P.A. v. S.C.A.*, 704 P.2d

---

**3.** Section 7 of the Alaska Constitution states that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Michael's brief fails to address his right to due process of law under the United States Constitution.

205, 208 (Alaska 1985). In *H.P.A.*, we cited with approval the standards for equitable estoppel set forth in *Clevenger v. Clevenger*, 189 Cal.App.2d 658, 11 Cal.Rptr. 707, 714 (1961):

> (1) [r]epresentation (direct or implied) of husband to child that he is the father; (2) husband intended his representation to be accepted and acted on by the child; (3) child relied on the representation and treated husband as father and gave his love and affection to husband; and (4) child was ignorant of the true facts.

*H.P.A.*, 704 P.2d at 208.

The husband's representation works to the child's detriment as follows: (1) the child is deprived of the mother's potential action to hold the natural father responsible for the support of the child; (2) the child gives his love and affection to the husband, expecting care and support until adulthood. Denying paternity later inflicts an emotional injury on the child; (3) the child, who has held himself out as legitimate, suffers a social injury when that status is removed. *Clevenger*, 11 Cal.Rptr. at 714–15. Furthermore, in Damon's case, the relationship between Damon and Devon is at risk if the children now discover they have different fathers.

 The application of the doctrine of estoppel to paternity cases is not new. Estoppel has been applied to the putative father in *Clevenger* and in *Johnson v. Johnson*, 93 Mich.App. 415, 286 N.W.2d 886, 887 (1979). In *Gossett v. Ullendorff*, 114 Fla. 159, 154 So. 177, 181 (1934), the mother was estopped from denying her late husband's paternity to the children's detriment. In *Morrell v. Giesick*, 188 Mont. 89, 610 P.2d 1189, 1191 (1980), the mother was estopped from denying her ex-husband's paternity. We conclude that the application of equitable estoppel to paternity cases advances sound policies in the law, and therefore adopt its application.

The superior court found that the *Clevenger* standards had been met. The record supports the Master's findings that Michael knew of the possibility that he was not Damon's father, but held himself out to others as Damon's father despite that pos-sibility. The finding that Michael is the only man Damon looks to as his father can be implied from testimony that Michael visited Damon and Devon regularly, supported both children, and took Damon to visit his family in Wisconsin. The superior court's finding of estoppel is not clearly erroneous.

## D. RELIEF UNDER ALASKA CIVIL RULE 60(b)

Michael and Robyn's dissolution decree included a determination that Damon was a child of the marriage. Alaska Civil Rule 60(b) provides for relief from a final judgment where mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud or any other reason justifying relief has occurred.

Michael has failed to show any reason justifying relief under Rule 60(b). He had reasons to doubt his paternity from the time of Damon's birth. He cannot now set aside a previous determination that he is Damon's father.

## III. CONCLUSION

The lack of notice that the paternity issue would be taken up at the December 2 hearing may have violated Michael's right to procedural due process of law under the Alaska Constitution. However, Michael waived his due process rights when he failed to make any attempt to object at the hearing. Michael is estopped from denying his paternity by his previous representations that he is Damon's father. Further, Michael is not entitled to relief under Alaska Civil Rule 60(b). The superior court's order is **AFFIRMED.**