*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEBRA P., | ) | |
| | ) | Supreme Court No. S-14568 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-09706 CI |
| v. | ) | |
| | ) | |
| LAURENCE S., | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 6831 – September 27, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Debra P., pro se, Anchorage, Appellant. No appearance by Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

At the trial call for this child custody case, the superior court suggested that the parties could introduce evidence regarding an interim custody order at the next hearing, so that they would have more time to reach a final settlement. Then, during the next hearing, both parties expressed some uncertainty about the purpose of the hearing. However, at the conclusion of the hearing, the court made findings to support a final

custody judgment. We conclude that this procedure violated the mother's right to due process of law. We therefore reverse and remand for a new custody trial.

## II.    FACTS AND PROCEEDINGS

Debra P. and Laurence S. are the parents of Dennis S., who was born in 2002.[1] Dennis lived with both parties in Alaska from the time of his birth until sometime in 2008 when the parties' relationship ended. In December 2008 Debra took Dennis to California, where he resided with her until August 2009. In August 2009 Debra asked Laurence to assume physical custody of Dennis. Laurence traveled to California to collect Dennis, and Dennis resided with Laurence for the next 12 months.

Dennis continued to reside with Laurence in Alaska until Debra returned to the state in August 2010. Shortly after her return, Debra resumed physical custody of Dennis by refusing to return Dennis to Laurence following a visit. Laurence filed a complaint to regain custody of Dennis and a motion for interim custody. He requested primary physical and legal custody of Dennis, allowing for weekend visitation with Debra. Following an evidentiary hearing on October 1, 2010, the superior court issued an interim order. The order granted Laurence primary physical custody of Dennis, but allowed Debra visitation with Dennis every weekend except for the first weekend of each month.

At a hearing on May 23, 2011, the superior court scheduled a trial call for September 7 and trial for the week of September 19. At the trial call, the parties stated that they were working toward a settlement. At the beginning of the trial call, the judge announced that trial would occur in two weeks if the parties could not reach a settlement. But by the end of the hearing, the judge indicated that the next hearing would be for an

---

[1]    Pseudonyms have been used to protect the privacy of the parties.

interim order to allow the parties more time to reach a complete settlement. The judge explained:

> Everybody comes back here on [September 21] and ready to present evidence at a minimum on . . . a new interim order and I can take testimony on the issue of the counselor and what a more long term custody order will be. It may not be final, but at least it would be a better long term order in terms of an interim order and what it would look like. The purpose of that would be, one, it will give you two time between now and Wednesday the 21st because if you're gonna come to an agreement you probably can do it by that time or come pretty close to it. And if you can't we can use that time to take evidence on the interim order and we can also schedule time to take additional evidence if we need to for a final order if that's what we want to do. But at a minimum you need to be prepared to show up and give me testimony on what it should look like for an interim order and then the counseling.

The court later reiterated the purpose of the September 21 hearing: "I have it set up as an evidentiary hearing at a minimum for an interim order so if you've got witnesses and evidence you want to present we're going to do that." The court then told the parties that if they were unable to reach settlement "then . . . if we gotta have a hearing that's fine — we'll have a trial on it."

The parties returned to court on September 21 to present evidence. There was no discussion of a settlement or the purpose of the hearing. The court asked if the parties were ready to proceed and then asked each to make an opening statement. After Laurence made his opening statement, Debra stated that she "didn't know [the parties] had to [make] opening statements." The judge urged her to tell him what she wanted him to order. After Debra made her statement, the judge stated that both parties appeared to agree that Laurence would have custody during most school weeks from Monday through Friday.

Laurence called Debra as his first witness. After the court took a recess, Debra notified the court that she had a time conflict. When the judge inquired what witnesses Debra planned to call, she stated, "I didn't have any questions prepared. I wasn't real familiar with what was going to go on today — the procedures." She explained that she had to return to work at noon, and the court assured her that there would be enough time to complete the proceeding. The court then heard testimony from Laurence and from Debra's mother.

Both parties made closing arguments. After the court announced it would take a short recess, Laurence asked whether the order would be interim or final, and the court clarified that the order would be final. The court then made findings supporting a final custody and visitation order.

After the hearing, Debra moved for reconsideration, stating, "I was unaware that the hearing scheduled [for] September 21 was change[d] to a trial." In her affidavit she elaborated, "I was ex[]pecting a hearing for [Laurence] and I to discuss our Agreement, and I found out it was a trial. [A]s a result . . . of being unprepared . . . to present evidence there are points on the final ruling that I strongly disagree with and [I] want them reconsidered." The issues Debra listed included a provision allowing Dennis to attend the school zoned for Laurence's residence; the requirement that Debra provide a detailed description of her residence and its occupants before she would be able to have Dennis with her for overnight visits; the scheduling of Christmas visitation; and the entitlement to claim Dennis as a dependent for tax purposes. The court denied Debra's motion without any explanation.

This appeal followed.

III.    STANDARD OF REVIEW

"The adequacy of the notice and hearing afforded a litigant in child custody proceedings involves due process considerations. A constitutional issue presents a

question of law which we review de novo, and to which we apply our independent judgment."[2]

## IV. DISCUSSION

### A. Due Process

Debra argues that the superior court erred when it changed the evidentiary hearing scheduled for September 21, 2011, into a final custody trial without giving her notice. She contends that she was denied an opportunity to present a substantive case with supporting evidence. This is essentially a due process argument. "Procedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case."[3] We have emphasized that "[i]t is essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination."[4]

In *Cushing v. Painter*, we held that a mother's due process rights were violated when a hearing that was initially scheduled to determine interim custody for the impending school year was transformed — without notice — into one that decided the

---

[2]    *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998) (citing *Wright v. Black*, 856 P.2d 477, 479 (Alaska 1993)).

[3]    *Id.* (quoting *Wright*, 856 P.2d at 480) (internal quotation marks omitted).

[4]    *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983).

question of permanent custody.[5] There, we noted that the record did not establish waiver on the mother's part "as to the procedural infirmities implicated in the hearing."[6]

In *Wright v. Black*, we considered a similar issue — whether the failure to notify a party that the issue of paternity would be determined at a hearing violated due process.[7] In that case, the court failed to give the parties notice prior to the hearing, but informed the parties at the beginning of the hearing that the paternity issue would be resolved, and the parties did not object.[8] In *Wright*, we distinguished *Cushing* because the parties in *Cushing* were not notified of the import of the proceeding at issue until *after* the hearing.[9] The *Wright* court acknowledged that notice at the hearing "still may not have been constitutionally sufficient," but it held that even if the notice were assumed deficient for due process purposes, the appellant had waived his right to object.[10]

This case is more like *Cushing*. The court's comments at the September 7 trial call suggested that the September 21 hearing would decide issues of interim custody and that another final hearing would be scheduled if the parties were unable to reach a settlement. Unlike in *Wright*, the court here did not clarify the purpose of the September 21 hearing at its beginning.[11] Also, the parties' comments here indicated that they were

---

[5]    *Id.*

[6]    *Id.* at 1046 n.10 (citing *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978)).

[7]    856 P.2d at 479-80, *overruled on other grounds by B.E.B. v. R.L.B.*, 979 P.2d 514 (Alaska 1999).

[8]    *Id.* at 480.

[9]    *Id.*

[10]   *Id.*

[11]   *Id.*

confused about the purpose of the hearing. Further, the court in this case did not clarify that it was prepared to enter a final ruling until after the parties had already made their presentations and delivered their final arguments. Finally, Debra brought her concerns to the court's attention when she filed her motion for reconsideration.

For the foregoing reasons, we conclude that it was a violation of Debra's right to due process of law when the superior court made a final custody and visitation decision after a hearing, which Debra reasonably believed would resolve only interim custody and visitation issues.

## B. Other Issues

Debra argues that the superior court erred when it denied her request for appointment of a custody investigator or a guardian ad litem. She also argues that the court erred when it discontinued a pretrial requirement for the parties to submit random urinalysis drug tests. She offers no legal authority to support her position on these issues; her arguments are so undeveloped that we could treat them as abandoned.[12] From this limited briefing and our review of the record, we cannot say that the superior court committed an abuse of discretion on these points.

Debra raises several other issues in this appeal. Many of these issues could also be treated as abandoned for insufficient briefing. However, we are not required to decide these issues because Debra will have an opportunity to be heard when the superior court holds a trial on remand.

## IV. CONCLUSION

We REVERSE the judgment of the superior court and REMAND for a new trial.

---

[12] *A.H. v. W.P.*, 896 P.2d 240, 243-44 (Alaska 1995) (finding waiver due to inadequate briefing by pro se litigant).