NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CORA C., | ) | |
| | ) | Supreme Court No. S-16798 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-17-00006 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | No. 1681 – June 13, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna Moran, Judge.

Appearances: Phil N. Nash, Kenai, for Appellant. David T. Jones, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

The Office of Children's Services (OCS) assumed emergency custody of an Indian child after receiving a report of medical neglect. The child was hospitalized for two and a half months and then placed with a foster family in the Anchorage area. The child's maternal aunt requested that he be placed with her in Nikiski, but OCS

---

      \*     Entered under Alaska Appellate Rule 214.

denied her request because he needed medical services available only in Anchorage. The aunt appealed OCS's decision to the superior court and requested a placement review hearing. Following the hearing, the court found that OCS had presented clear and convincing evidence of good cause to deviate from the Indian Child Welfare Act's placement preferences, which prioritize placements with family members over other foster placements. The aunt appeals. Because the trial court complied with the Indian Child Welfare Act and the relevant court rules, we affirm its decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Sammy was born in 2002.[1] Sammy is a member of a Native tribe[2] and is an Indian child as defined by the Indian Child Welfare Act (ICWA).[3]

Sammy was born with only one kidney and was diagnosed in 2013 or 2014 with kidney disease. Sammy allegedly received no medical care for his kidney disease until December 2016.

Sammy lived in Nikiski with his mother Doris until November 2016 when Doris sent him to live with his father Samuel in Kenai. A month later Samuel took Sammy to the hospital in Soldotna when he became ill; Sammy was medivaced to Anchorage for emergency dialysis. When he was admitted to the Anchorage hospital, Sammy was in kidney failure as the result of end-stage renal disease. He was also anemic, had dangerously low calcium levels, and had high levels of phosphorous in his blood.

---

[1]    We use pseudonyms to protect the privacy of the parties.

[2]    He is enrolled in the Native Village of Barrow.

[3]    25 U.S.C. § 1903 (2012).

Sammy was hospitalized for approximately two and a half months. In addition to his kidney disease, Sammy had an untreated neurogenic[4] bladder that exacerbated his kidney problems and required surgery; he also needed surgery to release a tethered spinal cord.[5]

Dr. Jeremy Gitomer, the only pediatric nephrologist in Alaska, began treating Sammy at the hospital. He estimated that Sammy had been in kidney failure for months, possibly as long as a year, when he was hospitalized. Dr. Gitomer testified at the probable cause hearing that Sammy would eventually need a kidney transplant.

Sammy was released from the hospital in March; OCS placed him in a foster home in Wasilla. Before Sammy was discharged, hospital staff trained the foster parents to perform the peritoneal dialysis that he required every night.[6]

## B.    Proceedings

OCS received a report from the Anchorage hospital that Sammy's medical needs had been neglected. Approximately a week after receiving the report, OCS assumed emergency custody of Sammy. OCS filed a petition for temporary custody alleging that he was a child in need of aid (CINA) under several sections of AS 47.10.011: (4) medical neglect; (6) substantial physical harm; and (9) neglect.[7] The

---

[4]    A neurogenic bladder cannot be emptied effectively.

[5]    A spinal cord is tethered when it becomes attached to the back of the bones. When the spinal cord is tethered, nerves become stretched and can become non-functional. Because of the stretching of these nerves, Sammy was unable to place his feet flat on the floor and instead walked on the outside of his feet.

[6]    Peritoneal dialysis is a home-based treatment that involves draining fluid from the abdomen for eight to ten hours.

[7]    *See* AS 47.10.011(4) ("the child is in need of medical treatment to cure, alleviate, or prevent substantial physical harm . . . and the child's parent, guardian, or
(continued...)

superior court granted OCS temporary custody of Sammy.

OCS notified Doris that it intended to place Sammy with a foster family in Wasilla after his release from the hospital. The proposed foster family did not meet any of the preferences set forth in ICWA.[8] In March Doris objected to the placement and asked to have Sammy placed instead with her sister Cora in Nikiski. Cora submitted a petition for a foster care placement. The superior court returned the documents to Cora, informing her that she was required either to file a motion to intervene or to file a request for placement directly with OCS.[9] Samuel also filed a motion for a placement review.

The superior court held a hearing over two days in March and April to determine whether OCS had probable cause to believe Sammy was a child in need of aid and to be awarded temporary custody of him. Dr. Gitomer testified about Sammy's medical condition and ongoing medical needs. He explained that he was the only pediatric nephrologist in the state and that no facilities other than the Anchorage hospital were equipped to deal with a pediatric dialysis patient in an emergency. He testified that

---

[7]    (...continued)
custodian has knowingly failed to provide the treatment"), (6) ("the child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent . . ."), (9) ("conduct by or conditions created by the parent, guardian, or custodian have subjected the child or another child in the same household to neglect").

[8]    In any foster care placement of an Indian child, in the absence of good cause to deviate, preference is given to "a member of the Indian child's extended family"; to "a foster home licensed, approved, or specified by the Indian child's tribe"; to "an Indian foster home licensed or approved by an authorized non-Indian licensing authority"; and then to "an institution for children approved by an Indian tribe or operated by an Indian organization." 25 U.S.C. § 1915(b). Further "[w]here appropriate, the preference of the Indian child or parent shall be considered." 25 U.S.C. § 1915(c).

[9]    We denied Cora's petition for review of the return of the document.

he required patients receiving peritoneal dialysis to come to his office twice a month, and frequently required pediatric patients to be seen weekly. Dr. Gitomer explained that Sammy was at a heightened risk for infection and was likely to have one infection a year. Dr. Gitomer further explained that the medical aspect of dialysis was fairly simple, but that psychosocial, developmental, and nutritional issues were often challenging for pediatric patients.

Both parents stipulated to probable cause and to Sammy's removal from their homes. They each withdrew their motions for review of his proposed placement: Doris withdrew hers because Sammy did not want contact with her, and Samuel withdrew his because there was no foster home available that met the ICWA preferences.

The superior court issued a temporary custody order a month after the hearing concluded. It found that OCS had established good cause to deviate from the placement preferences because no homes were available that complied with the placement preferences.

In April Cora submitted a request to OCS to place Sammy with her. In May OCS denied her request because Dr. Gitomer insisted that Sammy remain in the Anchorage area, close to medical services. OCS advised Cora that she could apply to have Sammy placed with her if she moved to Anchorage. In July Cora requested a review hearing before the superior court on the denial of her request, pursuant to CINA Rule 19.1(e).

In August the superior court held the placement review hearing. It scheduled the hearing for 30 minutes. Dr. Gitomer testified that Sammy would likely be able to move back to Nikiski in the future. But Dr. Gitomer recommended that Sammy remain in the Anchorage area for the immediate future in case any problems arose and because he needed two additional surgeries. Dr. Gitomer testified that he had experienced "significant" logistical difficulties when patients lived outside of the

Anchorage or Matanuska-Susitna area. He testified that some services would need to be set up in Nikiski if Sammy moved there in the future.

The court found by clear and convincing evidence that placement with Cora would not be appropriate solely because of Sammy's medical needs and denied her request. The court advised Cora to work with OCS and Dr. Gitomer to see if services could be arranged so Sammy could be placed with her once his medical condition stabilized.

Cora appeals.

## III. STANDARD OF REVIEW

"We review whether a [superior] court's findings satisfy the statutory requirements of the CINA and ICWA statutes de novo."[10]

"We review the superior court's finding of good cause to deviate from ICWA placement preferences using an abuse of discretion standard."[11] "It would be an abuse of discretion for a superior court to consider improper factors or improperly weigh certain factors in making its determination."[12] "We review the factual findings supporting the superior court's good cause determination for clear error."[13]

---

[10] *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1111 (Alaska 2010).

[11] *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 430 (Alaska 2012).

[12] *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.* (*Tununak I*), 303 P.3d 431, 440 (Alaska 2013) (quoting *In re Adoption of Sara J.*, 123 P.3d 1017, 1021 (Alaska 2005)), *order vacated on other grounds*, *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.* (*Tununak II*), 334 P.3d 165 (Alaska 2014).

[13] *Id.*

"Whether there was a violation of due process is a question of law that we review de novo, adopting 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[14]

## IV. DISCUSSION

### A. The Superior Court Complied With The Requirements Of The Indian Child Welfare Act.

ICWA establishes placement preferences for any Indian child who is the subject of foster care proceedings.[15] The State must comply with those statutory preferences "in the absence of good cause to the contrary."[16] The statute and its implementing regulations establish a hierarchy of preferences: the highest priority is with a member of the child's extended family.[17] As Sammy's maternal aunt, Cora is a member of his extended family.[18]

OCS must show by clear and convincing evidence that there is good cause before deviating from a placement preference.[19] Cora argues that the superior court did not apply this standard in its determination, but the court stated that there was "clear and convincing evidence to not place [Sammy with Cora] now."

---

[14] *Paula E.*, 276 P.3d at 430 (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000)).

[15] 25 U.S.C. § 1915(b).

[16] *Id.*

[17] 25 U.S.C. § 1915(b)(I); 25 C.F.R. § 23.131(b) (2016).

[18] 25 U.S.C. § 1903(2).

[19] 25 C.F.R. § 23.132(b); *see also Tununak I*, 303 P.3d 431, 453 (Alaska 2013), *order vacated on other grounds*, *Tununak II*, 334 P.3d 165 (Alaska 2014).

Cora next argues that there was not clear and convincing evidence of good cause to deviate from the placement preference. The federal regulations that implement ICWA offer a number of examples that supply "good cause" to deviate from the placement preferences; one of them is "[t]he extraordinary physical, mental, or emotional needs of the Indian child, such as specialized treatment services that may be unavailable in the community where families who meet the placement preferences live."[20] The superior court found that there was good cause because of Sammy's "unique and special medical needs" that "can only be treated . . . in Anchorage at this time."

The evidence presented at both the probable cause and placement review hearings supports the court's finding.[21] Dr. Gitomer testified that he could not recommend Sammy move to Nikiski until his condition stabilized because he needed two additional surgeries and access to the appropriate medical treatments and facility if any problems arose. Dr. Gitomer emphasized that Nikiski did not have a local pediatrician and that the hospital in the area did not provide dialysis services. Based on this evidence it was not an abuse of discretion for the superior court to find that OCS had presented clear and convincing evidence of good cause to deviate from the placement preferences.[22]

---

[20] 25 C.F.R. § 23.132(c)(4). This case was initiated after December 2016 and falls under the 2016 Regulations. 25 C.F.R. § 23.143.

[21] Cora argues that OCS inappropriately relied solely on its cross-examination of Dr. Gitomer at the earlier probable cause hearing and that the court impermissibly considered that earlier testimony. But OCS put on evidence at the placement review hearing by cross-examining Dr. Gitomer at that hearing and the court appropriately considered that testimony. Cora also argues that OCS did not meet its burden at the review hearing because it only presented evidence through cross-examination, but she makes no legal argument to explain why such evidence was inappropriate or why it would be legal error for the court to rely on available and properly admitted testimony.

[22] *See Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's*
(continued...)

Cora argues that the superior court inappropriately placed the burden of proof on her, rather than on OCS, by requiring that she demonstrate that Sammy's needs could be met in Nikiski.[23] But the superior court's finding that OCS met its burden of proof does not inappropriately burden Cora.

Cora appears to argue that OCS will never place an Indian child in a rural home if a court can consider the availability of medical facilities. But the availability of treatment services is only considered if a child has "*extraordinary* physical, mental, or emotional needs."[24] Unless the child's extraordinary needs constitute good cause to deviate, "[t]he existence of a suitable preferred placement precludes *any* consideration of a non-preferred placement."[25] Access to medical facilities or specialized treatments would therefore not be considered unless such good cause exists.

Cora also appears to argue that the court inappropriately set up a tiered placement that would allow her to automatically move to a higher "tier" and get custody of Sammy if she took certain actions. She objects that, in setting up this tiered system, the court did not specify what she was required to do to move to a higher tier. But this argument misconstrues both the court's comment about family members being a "first-tier" placement and the court's actual decision. The court's reference to a "first-tier" placement simply reflects that placement with a member of the child's extended family

---

[22]     (...continued)
*Servs.*, 276 P.3d 422, 430 (Alaska 2012).

[23]     25 C.F.R. § 23.132(b); *see also Paula E.*, 276 P.3d at 437 ("OCS bears the burden of showing good cause to deviate from placement preferences.").

[24]     25 C.F.R. § 23.132(c)(4) (emphasis added).

[25]     *In re Adoption of Sara J.*, 123 P.3d 1017, 1028 (Alaska 2005) (emphasis in original). "The statute expressly envisions 'good cause' as an exception to the general rule of preferred placements." *Id.*; *see also* 25 C.F.R. § 23.132.

is the first placement preference under ICWA.[26]

Furthermore, the court did inform Cora of what she needed to do and what other events needed to occur for Sammy to be moved to her home. The court found that not placing Sammy with her immediately was appropriate because his current medical needs could only be addressed in the Anchorage area. But the court specifically stated that placement with Cora in Nikiski "is something . . . to look into as [Sammy] continues to progress and improve." It told Cora to work with the doctors and Sammy's guardian ad litem to try to get the necessary services and treatments in Nikiski so Sammy would be able to move there in the future once he stabilized. These instructions to Cora did not create an undefined tiered placement to automatically transfer Sammy to Cora's custody.

The superior court complied with ICWA when it found good cause to deny Cora's request that Sammy be placed with her.[27]

---

[26]     25 U.S.C. § 1915(b); 25 C.F.R. § 23.131(b).

[27]     Cora mentions that the temporary custody order stated that no ICWA compliant placement was found even though Cora had already asked for placement; she has waived any arguments related to this issue by not raising it at the placement review hearing. *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1255 n.61 (Alaska 2001). Additionally both parents withdrew their requests for placement review at the probable cause hearing, and the father's attorney informed the court that there was no currently available placement.

Cora also argues that OCS did not provide her appropriate documentation and did not comply with ICWA's documentation requirements or the CINA rules, and that the superior court did not enforce the documentation requirements. Cora did not raise these arguments at the placement hearing and they are all waived. *See id.* In any event, the documents that Cora requested are confidential and unrelated to the denial of her request for placement. *See* AS 47.10.093; CINA Rule 22; *cf.* CINA Rule 19.1(e). And the CINA rules that Cora cites are inapplicable to a placement review hearing. *See* CINA Rule 10.1(b) (concerning hearings authorizing a removal or extending a removal); CINA Rule 16(a)(1) (concerning predisposition reports).

**B.** **The Superior Court Did Not Violate Cora's Right To Due Process.**

Cora argues that the superior court violated her due process rights by limiting her argument to 15 minutes and by not providing her documentation of OCS's placement search.[28] But Cora did not explain how she was prejudiced by any alleged due process violation. Cora must do more than demonstrate "merely the 'theoretical possibility of prejudice.' "[29] Cora asserts in her brief that she had more questions for Dr. Gitomer, but the court cut her off. But Cora's attorney was given the opportunity at the placement review hearing to ask additional questions of Dr. Gitomer; he declined to do so. He instead asked to, and did, make a two-sentence closing argument. Cora has not explained how any alleged procedural deficiency prejudiced her. We therefore conclude that her due process rights were not violated.[30]

---

[28] Cora also appears to argue that we violated due process by failing to return the matter to the trial court with instructions to comply with the requirements of ICWA and the CINA rules. Cora does not make more than a cursory mention of this argument in her briefing and it is abandoned. *See Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010).

[29] *In re Jacob S.*, 384 P.3d 758, 764 (Alaska 2016) (quoting *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 433 (Alaska 2012)); *cf. Moody v. Royal Wolf Lodge*, 339 P.3d 636, 643 (Alaska 2014) ("[T]he party raising a due process objection must show that it has suffered actual prejudice, even in a case where the notice is clearly inadequate." (quoting *Paula E.*, 276 P.3d at 433)).

[30] Regardless of the extent of her due process interest in these proceedings, Cora had sufficient opportunity to be heard to satisfy due process. Cora received a written explanation of why OCS denied her placement request, submitted a prehearing brief, and had a reasonable opportunity to present her arguments before the superior court. Due process does not require more. *See Debra P. v. Laurence S.*, 309 P.3d 1258, 1261 (Alaska 2013) ("Procedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case." (quoting *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998))).

## V.     CONCLUSION

We AFFIRM the superior court's decision.