NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HEATHER CRAFT-JOHNSON, | ) | |
| | ) | Supreme Court No.  S-18824 |
| Appellant, | ) | |
| | ) | Superior Court No.  4FA-21-01163 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CHRISTOPHER MILLS, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2075 – February 26, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances:  Teryn Bird, Interior Alaska Center for Non-Violent Living, Fairbanks, and Roseann S. Wall, The Wall Firm, LLC, Fairbanks, for Appellant.  No appearance by Appellee Christopher Mills.

Before:  Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.     INTRODUCTION

A mother appeals the superior court's custody order.  The court awarded the parents shared physical and joint legal custody but gave the father exclusive authority to make decisions about their daughter's schooling and extracurricular activities.  The court ordered the mother to provide their daughter with health insurance

---

\*          Entered under Alaska Appellate Rule 214.

but ordered the parents to share the cost. And the father was granted the right to claim the child on his federal taxes. The mother appeals, disagreeing with each of the court's decisions. We are not persuaded by her arguments and affirm the judgment of the superior court.

## II.     FACTS AND PROCEEDINGS

Heather Craft-Johnson and Christopher Mills began a relationship in 2013 and their daughter was born in 2017. The two disagree as to when their relationship ended, but it was no later than September 2020.

Mills filed a complaint for custody of their daughter in February 2021. He requested sole legal and primary physical custody, child support, and the right to claim her as a dependent for federal tax purposes and control her permanent fund dividend (PFD). Craft-Johnson requested that she and Mills share their daughter's PFD, and that they alternate years claiming her as a dependent on their tax returns.

The parties agreed to an interim custody arrangement in November 2021. That agreement provided for shared physical custody on a week-on, week-off basis, and that Craft-Johnson's father would provide daycare for their daughter. It established a holiday visitation schedule. It also required Mills to make payments on his child support arrearage from a preexisting child support order.

Trial was held over three days in April, May, and July of 2022. Mills and Craft-Johnson testified.[1]   Craft-Johnson filed a pretrial memorandum stating that "[c]ustody and [v]isitation is not in dispute," and alleged that Mills had violated the agreed-upon custody exchange schedule and failed to secure daycare when his work schedule changed with short notice.

---

[1]     Craft-Johnson's father also testified about property division matters not at issue in this appeal.

Mills testified that granting him the right to claim their daughter as a dependent on his taxes would be in her best interests. He explained that this would reduce his tax burden and help him pay the back child support he owed. The court allowed Mills to play a recording of an argument with Craft-Johnson from November 2019 to show that Craft-Johnson's reason for seeking custody was to "pursue" or "restrict" Mills's financial situation. Mills also testified that it would be "easiest" for both parents if their daughter attended Hunter Elementary School rather than Pearl Creek, which Craft-Johnson preferred. On cross-examination Mills denied that he had previously agreed to send their daughter to Pearl Creek.

Mills also testified that he did not believe that the issues at trial were limited to financial issues. The court then "interject[ed]" to clarify what Mills expected the court to decide. Mills ultimately stated he would "honor" the interim custody agreement. The court stated it understood he was not raising a challenge to "custody, visitation, [or] time with [their daughter]." Craft-Johnson's attorney told the court she would request a continuance if Mills wished to reopen the interim custody agreement.

Craft-Johnson also testified. She testified that Pearl Creek was a better school for their daughter. She stated that it was conveniently located for both parents, their daughter had already learned about the school, she liked the programming the school offered, and finally, that she worked there.

Craft-Johnson acknowledged that Mills had claimed their daughter as a dependent on his taxes in 2017, 2018, and 2019 and that she had done so in 2020 and 2021. She asked the court to order that they alternate years instead of allowing only Mills to claim her to allow him to pay his child support arrearage, because the arrearage was "not essentially my financial burden to carry."

In August 2022 Craft-Johnson's attorney sent Mills two letters urging him to not interfere with their daughter attending school at Pearl Creek. Mills filed a "Motion for Final Orders" in November in order to clarify his child support obligation.

Craft-Johnson partially opposed Mills's motion. She requested that the court issue a final order because it was "imperative to establish firm guidelines and to protect her and her children's safety." She asked the court to set guidelines for the parents' authority over activities involving their daughter including phone calls and extracurricular activities.

The superior court issued its decision in May 2023. The court ordered shared physical custody on a week-on, week-off basis, making the interim physical custody arrangement permanent. The court also granted joint legal custody in almost all respects, except that Mills was authorized to make decisions about where their daughter attends school and her involvement in extracurricular activities. The court required Mills to consider Craft-Johnson's views on these matters, even if he ultimately disagreed with her. The court awarded the tax credit to Mills, reasoning that it would incentivize him to pay his child support arrearage, and noting that he had testified that doing so would be in their daughter's best interests. The court also required Craft-Johnson to enroll their daughter in a health insurance plan, with the parents splitting its cost.

Craft-Johnson moved for reconsideration. She argued that the court erred by not providing notice that it would address custody after stating at trial that custody was not at issue and because it did not accept the parenting plan she proposed in her post-trial brief. She also argued it was error to permit only Mills to claim their daughter on his taxes and to require her to "be responsible for" their daughter's health insurance.

The court denied reconsideration. It stated it had properly decided custody because the agreement in place before trial was expressly "interim," and because both parents had placed custody at issue by testifying about it and raising it in post-trial briefing. The court also pointed out that Craft-Johnson had asked it to rule on the insurance issue in her post-trial brief. It noted that the interim agreement did not address legal custody, that it had ordered an identical physical custody arrangement to the

interim agreement, and that it awarded joint legal custody except for the issues they had raised at trial.

The court rejected Craft-Johnson's argument that it erred when it considered their daughter's best interests. It found Mills to be more credible and more focused on their daughter's best interests than Craft-Johnson. The court noted that after Mills had testified that he would use the tax credit for their daughter's benefit, Craft-Johnson "had a chance to present evidence of how she would [do likewise] . . . [but] [s]he offered nothing."

Craft-Johnson appeals.

## III.   STANDARD OF REVIEW

The superior court has "broad discretion in its determination of child custody," and we will not set aside that determination "unless its factual findings are clearly erroneous or unless it abused its discretion."[2]  A factual finding is clearly erroneous when our "review of the entire record leaves us 'with a definite and firm conviction that a mistake has been made.' "[3]  "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[4]  "We will find that the trial court abused its discretion if it has considered improper factors, failed to consider relevant statutory factors, or assigned disproportionate weight to some factors while ignoring others."[5]

---

[2]     *Weathers v. Weathers*, 425 P.3d 131, 136 (Alaska 2018) (quoting *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1200 (Alaska 2012)).

[3]     *Pingree v. Cossette*, 424 P.3d 371, 377 (Alaska 2018) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008), *overruled on other grounds by Geldermann v. Geldermann*, 428 P.3d 477, 487 n.52 (Alaska 2018)).

[4]     *Id.* (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)).

[5]     *Weathers*, 425 P.3d at 136 (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1121 (Alaska 2004)).

"[T]he adequacy of the notice and hearing afforded a litigant in child custody proceedings involves due process considerations," which we review de novo.[6] We also review de novo "the question of whether a judge appears biased, which is assessed under an objective standard."[7]

## IV. DISCUSSION

Craft-Johnson challenges several aspects of the superior court's custody decision. She first argues that the parties did not have notice the court would make a custody determination after trial. She also argues the court "considered improper factors and facts not admitted in evidence" in making its best interests determination and that it was biased against her. Finally, she argues the court abused its discretion when it awarded the tax credit to Mills and required Craft-Johnson to "take out" health insurance for their daughter.

### A. Craft-Johnson Was Not Deprived Of Due Process.

Craft-Johnson first argues that the superior court improperly determined physical and legal custody because it was not at issue in trial. She points to both parties' pretrial filings and statements as well as the court's initial listing of the issues before it, which did not include custody. She asserts that the court should have informed the parties it was rejecting their interim custody agreement before trial. And she claims that she was denied due process when the court did not inform the parties it would decide custody.

---

[6] *Geldermann*, 428 P.3d at 482 (quoting *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998)).

[7] *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) (quoting *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018)).

"Procedural due process under the Alaska Constitution requires 'notice and opportunity for hearing appropriate to the nature of the case.' "[8] "[W]e typically identify due process violations in the custody context when a party has not had notice of the consequences of a particular hearing and lacked adequate time to prepare."[9] In *Siekawitch v. Siekawitch*, we held that a father had adequate notice that the mother was seeking increased custodial time with their children after the mother raised the issue in her testimony and in her pretrial filings.[10] We also highlighted that the father had cross-examined the mother about her proposed custody schedule and filed an opposition to her custody motion.[11]

The superior court did not err by entering a final custody order. Both parties sought sole legal custody of their daughter in their initial pleadings. The parties later agreed to share physical custody but the court's resulting custody order was expressly an *interim* order and made no mention of legal custody. The interim custody order did not resolve the issue of legal custody, and the court "was under no obligation to maintain the interim custody agreement."[12] Craft-Johnson also placed legal custody

---

[8] *Weathers v. Weathers*, 425 P.3d 131, 137 (Alaska 2018) (quoting *Wright v. Black*, 856 P.2d 477, 480 (Alaska 1993), *overruled on other grounds by B.E.B. v. R.L.B.*, 979 P.2d 514, 520 n.47 (Alaska 1999)).

[9] *Id.* at 138; *see Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983) (holding that parent "[a]cting under the impression" that expedited hearing would "determine solely the question of interim custody" for school year lacked adequate time to prepare and make her case); *Lashbrook*, 957 P.2d at 329-30 (vacating custody modification made based on domestic violence incident when parties were not informed permanent custody was at issue during domestic violence trial); *Debra P. v. Laurence S.*, 309 P.3d 1258, 1261 (Alaska 2013) (concluding that self-represented parent was denied due process, when she expressed confusion at hearing and did not understand that interim custody hearing would become final custody hearing).

[10] 956 P.2d 447, 450 (Alaska 1998).

[11] *Id.*

[12] *Co v. Matson*, 313 P.3d 521, 530 (Alaska 2013).

at issue by asking the court to order that their daughter attend Pearl Creek.[13] And despite her lawyer's statement that she would need a continuance if custody were going to be addressed, she did not request one.

Craft-Johnson further testified in detail regarding her school preference for their daughter and requested rulings on a litany of custody matters in her post-trial brief. Her brief raised both issues of physical custody, such as holiday visitation, and legal custody, such as the choice of their daughter's school. And the court's order simply made permanent the interim agreement's shared physical custody schedule and joint legal custody in all but the two matters about which the parents disagreed: choice of school and extracurricular activities. The superior court did not deprive Craft-Johnson of due process by making a final custody determination.

## B. The Superior Court Did Not Err In Its Consideration Of The Best Interests Factors.

Craft-Johnson argues that the superior court based its best interests determination on information that was not in evidence, and that it improperly weighed the relevant statutory factors.[14] She also argues that the court was biased against her. We are not persuaded by Craft-Johnson's arguments.

Craft-Johnson's arguments amount to claims that the court improperly determined witness credibility. But we accord great deference to the superior court's credibility determinations.[15] Because the court hears live testimony in its role as fact

---

[13]  *See id*. at 526-30 (affirming award of primary physical custody to mother based on "the need for stability as [the children] approach school age" when record demonstrated father repeatedly failed to bring children to school on time).

[14]  *See* AS 25.24.150(c)(1)-(9).

[15]  *Downs v. Downs*, 440 P.3d 294, 298-99 (Alaska 2019).

finder, it is "in the best position to weigh witness credibility."[16] The court's factual findings about the child's best interests were based almost exclusively on oral testimony, and the credibility of the witnesses testifying. Those factual findings are supported by the record and not clearly erroneous.

Craft-Johnson also argues the court abused its discretion by improperly weighing certain best interest factors against her and in Mills's favor. But Craft-Johnson does not specify how the court "considered improper factors, failed to consider relevant statutory factors, or assigned disproportionate weight to some factors while ignoring others."[17] Her disagreement with the weight the court gave to each factor does not demonstrate an abuse of discretion. The superior court relied heavily on the testimony presented during trial and its credibility determinations when it considered the best interest factors. It did not abuse its discretion by weighing the best interest factors in the manner that it did.

Craft-Johnson also alleges that the superior court was biased against her, and that its bias was reflected in its best interests analysis. She contends that the court's language in its custody and reconsideration orders demonstrates that bias. However, she fails to show how the court "formed an unfavorable opinion of [her] from . . . information [received outside of the pleadings and evidence]" or that it heard, learned, or did "something [during the proceedings] so prejudicial that further participation would be unfair."[18] Instead the court's comments appear to be "the result of opinions

---

[16]   *Sean B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 251 P.3d 330, 335 (Alaska 2011) (quoting *Jon S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 212 P.3d 756, 762 n.16 (Alaska 2009)).

[17]   *Weathers v. Weathers*, 425 P.3d 131, 136 (Alaska 2018) (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1121 (Alaska 2004)).

[18]   *Downs*, 440 P.3d at 299-300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018)).

and attitudes formed in court by the evidence that the judge heard."[19] As we have explained, bias "cannot 'be inferred merely from adverse rulings.' "[20] The court's decision in Mills's favor on contested issues does not show that the court was biased against Craft-Johnson.

### C. The Superior Court Did Not Abuse Its Discretion By Awarding The Tax Deduction To Mills And Requiring Craft-Johnson To Obtain Health Insurance.

Craft-Johnson argues that the court abused its discretion by awarding the child tax credit to Mills, asserting that it failed to adequately explain how doing so was in their daughter's best interests. She also contends that requiring her to "take out" health insurance for their daughter was an abuse of discretion.

Alaska Civil Rule 90.3(k) requires the court to award this tax credit in a manner that is "just and proper" and "in the child's best interests." The court explained that allocating the tax credit to Mills would be in their daughter's best interests because it would incentivize Mills to pay his child support arrearage. The court cited Mills's uncontroverted testimony that, due to Craft-Johnson's income status, she would not receive a tax benefit from the credit, and as a result their daughter would not stand to benefit if the credit was allocated to her. In light of that evidence, the superior court did not abuse its discretion by permitting Mills to claim their daughter as a dependent for federal tax purposes.[21]

---

[19] *Id.* at 300 (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1186 (Alaska 2001)).

[20] *Id.* (quoting *Kinnan v. Sitka Consulting*, 349 P.3d 153, 160 (Alaska 2015)).

[21] Craft-Johnson also argues that AS 25.24.152(a) prohibits allocating the tax credit to Mills. That statute forbids the court from "unconditionally grant[ing]" a noncustodial parent the right to claim a child as a dependent for federal taxes in "action[s] for divorce, dissolution, or to declare a marriage void." AS 25.24.152(a). But this is not such an action and Mills is not a "noncustodial parent" — the parties share 50/50 physical custody of their daughter.

Finally, Craft-Johnson argues that the superior court abused its discretion by making her "take out" health insurance for their daughter because their daughter already qualifies for health insurance under Denali KidCare.[22] But Craft-Johnson appears to misunderstand the court's order. It did not require her to obtain *additional* insurance.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[22] Denali KidCare is Alaska's child healthcare insurance program funded by the federal Medicaid Program. *See* 42 U.S.C. § 1397a(a) (establishing funding allocation for state-administered child healthcare insurance programs under the Medicaid Program); 7 Alaska Administrative Code 105.100 (describing healthcare services covered by Alaska's Medicaid Program); *Denali KidCare*, ALASKA DEP'T OF HEALTH, https://health.alaska.gov/dpa/Pages/dkc/default.aspx (last visited Sept. 12, 2024).