*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ROWENA WEATHERS, | ) |
| | ) Supreme Court No. S-16610 |
| Appellant, | ) |
| | ) Superior Court No. 3KN-13-00897 CI |
| v. | ) |
| | ) O P I N I O N |
| DENNIS WEATHERS, | ) |
| | ) No. 7271 – August 10, 2018 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Kevin D. Koch, Soldotna, for Appellant. Kara A. Nyquist, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.    INTRODUCTION

A mother appeals the superior court's custody modification order awarding the father physical custody of their daughter 59% of the year. Previously, pursuant to the parties' divorce settlement agreement, the mother had been awarded primary physical custody in large part because the father's employment required him to work overseas most of the year. After the father was retired by his employer due to a downturn in the oil market, he unilaterally took custody and refused to allow the mother to have custody

of their daughter except for very limited visitation. The mother moved to modify custody to a 50/50 basis. We conclude that the superior court's custody award was an abuse of discretion because it gave disproportionate weight to grandparent involvement as a factor favoring the father while failing to weigh against the father the statutory best interests factor regarding the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the child and the other parent. We reverse the custody award and remand to the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Dennis and Rowena Weathers married in July 2007, when Dennis was 44 and Rowena was 20. The couple had a daughter, Sally, in April 2008.[1] Dennis had worked on the North Slope in the oil industry for around 20 years, but began to work in Africa and other overseas locations later in his career. From birth through first grade Sally was in Rowena's primary care; Dennis was working overseas for most of those years. He came home to Kenai only occasionally, for somewhere between ten days and two months per year. Rowena kept photographs of Dennis for their daughter and would coach her on who her father was. The child's paternal grandparents lived nearby and had contact with the child.

The parties divorced pursuant to a settlement agreement in April 2014. The parties agreed that Rowena would "have primary physical custody of [Sally]" and that Dennis would "have custody of [Sally] in Alaska during his weeks off from work overseas." Dennis came back from Africa in June 2015 after being directed by his employer, Schlumberger, to take vacation days following a downturn in the oil market. He told Rowena he had been asked to take vacation days because he had so many

---

[1]    We use a pseudonym for the child to protect her privacy.

vacation days accrued. He assumed primary physical custody of his daughter during his time off. He and Sally lived in the family home, and Rowena moved into a single family residence with her fiancé in the same general area where Dennis and the paternal grandparents lived.

For the first two months Dennis was back home, he allowed Rowena very limited visitation with their daughter; they met at a McDonald's for lunch, they went to the park for an hour, and Sally attended a lake party with her mother. Dennis eventually allowed weekend overnights starting in September. But he did not want to give Rowena too many overnights and lose the 50% reduction in child support the settlement agreement gave him "during periods of visitation that exceed[ed] 27 days."

Rowena asked Dennis in August 2015 when he was going back to work. He said he did not know and that it might be October 4. He received a termination letter on September 18, 2015, effective the same day, but did not inform Rowena. He later testified that his company was still trying to find a place for him before the termination paperwork was finished; that between September and December 2015, he was still hoping to be employed in his company's Gulf of Mexico or United Kingdom projects; and that if his company could not find a place for him by the time he got his first retirement check on December 1, he would then be terminated permanently.

In early October Rowena again asked Dennis when he was going back to work. Despite his termination letter from his employer, he answered that he was not sure and again failed to advise Rowena that he had already received the termination letter. In response to Rowena's further questioning about his departure date, he told her to stop asking him. In early December, when he got his first retirement check, he called Rowena and told her he had been effectively retired the month before — November. At trial, he described himself as retired or "semi-retired." Rowena approached Dennis about changing the custody arrangement and asked for more time with Sally. Dennis

responded that if she wanted more than the weekends he was "giving her" she would have to file a motion with the court.

## B. Proceedings

Rowena filed a motion to modify custody in January 2016 seeking a 50/50 shared physical custody arrangement. Dennis opposed the motion, interpreting the settlement agreement as giving him primary custody when he returned to Alaska and arguing his retirement did not constitute a substantial change in circumstances. In April 2016 the court issued an order concluding that Dennis's interpretation of the settlement agreement was "not in sync with the common meaning of the phrase 'weeks off from work overseas,' " finding that Dennis's retirement was a material change of circumstances sufficient to justify a new custody determination, and setting an evidentiary hearing. The court held an interim hearing after which it ordered a 70/30 shared custody schedule during the school year favoring Dennis and a 50/50 schedule during the summer. The court held a full custody hearing on January 10, 2017. Rowena testified and presented testimony from her fiancé and Dennis's sister-in-law. Dennis testified and presented testimony from his father.

The superior court's findings on custody addressed each of the statutory best interests factors under AS 25.24.150(c).[2] With respect to factor one on the child's needs, the court found that Sally had the needs of a normal eight year old, but had spent little time living with both her parents at the same time . With respect to factor two on the capability and desire of each parent to meet the child's needs, the court found that both parents had demonstrated the capability and desire to care for Sally on a regular,

---

[2] AS 25.24.150(c) provides that "[t]he court shall determine custody in accordance with the best interests of the child" and that "[i]n determining the best interests of the child the court shall consider" a list of eight specific factors as well as any "other factors that the court considers pertinent."

consistent basis; Rowena from birth through first grade, and Dennis in the year he had full custody of Sally after returning from overseas. Additionally, the court found that as a semi-retired person, Dennis had ample time to care for Sally, and that Rowena could arrange her classes and homework to allow for ample time as well.

Under factor three on the child's preference, the court found that Sally was too young to express a preference for either parent, but cautioned the parties that Sally appeared to be learning how to manipulate them by telling each what they wanted to hear. Under factor four on the love and affection existing between the child and each parent, the court found that both parents loved Sally and she loved them. The court found under factor five on the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity, that both the family home in which Sally had spent her infancy and the single family residence where Rowena and her fiancé lived provided stable and satisfactory living arrangements.

With respect to factor six on the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, the court noted that, "from [Rowena's] perspective, the father resisted her efforts to spend more time with [their daughter] after he returned and began exercising primary custody." The court then noted that Dennis questioned Rowena's temperament around their daughter, her ability to help Sally with homework, and suggested there were heated arguments between Rowena and Sally. And the court noted that Rowena raised concerns about Dennis leaving their daughter home alone. The court then concluded that factor six was neutral.

With respect to factor seven, the court found that no domestic violence was alleged by either parent, noted that witnesses had described an instance of Sally throwing a tantrum while with her mother, and noted that Sally appeared to mind her father but did not always feel obligated to mind her mother. The court found no evidence of substance

abuse under factor eight.

The court discussed the role of extended family in its analysis as "another factor that the court consider[ed] pertinent" under the catch-all provision of AS 25.24.150(c)(9):

> The paternal grandparents live nearby and have maintained a significant role in the life of this child. They have six grandchildren, and enjoy having those grandchildren at their home, playing. The grandparents are likely to welcome [their grandaughter] whether she is in the custody of her mother or her father, but [she] is likely to have more opportunities to be with these grandparents while she is in her father's custody.

The court concluded that the best interests factors were "generally even between the parents," but that "[t]he significant value to [Sally] of regular contact with her paternal grandparents tip[ped] the scales in favor of the father." The court ordered that Dennis and Rowena share summers on a 50/50 basis, but gave Dennis more time during the school year — two out of every three weeks less one overnight during the weekend between his two weeks. With holidays taken into account, this amounted to a 59/41 split in Dennis's favor with respect to total overnights.

Rowena filed a motion for reconsideration, objecting to the court's reliance on grandparent involvement in its decision. She argued that because she had no notice of the issue of grandparent involvement she had been denied due process; that no evidence supported that grandparent involvement was in the child's best interests; that it was speculation to conclude that awarding more time to Dennis would increase the level of grandparent involvement; that given the opportunity, she could have presented evidence contradicting this conclusion; and that no evidence suggested Dennis needed more than 50% custody to achieve grandparent involvement in Sally's life at a level that would be in her best interests. Rowena also argued that the court's evaluation of statutory best interests factor six — on the willingness and ability of each parent to

facilitate a relationship between the other parent and the child[3] — misconceived her concern that Dennis intentionally misled her about his not going back to work long after he knew he had been terminated. She asserted that the court made no specific findings on the evidence presented and instead discussed concerns unrelated to factor six.

The court denied the motion for reconsideration. The court reasoned that the role of extended family, including grandparents, may be considered under *Barrett v. Alguire*, which held that factor five can include consideration of the child's "community of friends and family."[4] The court also found that Dennis's witness list, the fact that both parties discussed the paternal grandparents in their testimony, and Rowena's ability to cross-examine the grandfather afforded Rowena due process on the issue. In addition, the court decided that even though the custody factors were "generally even," the dispute turned on "subtle differences in the custodial factors brought out by the parties," such as the child's ability to live in the home she grew up in when with her father, Dennis's less contentious and argumentative interactions with the child when helping with school work, and Dennis's ability to devote full attention to his daughter because of his retirement. Rowena appeals.

## III.    STANDARD OF REVIEW

"Whether there was a violation of [a parent's] right to due process is a question of law" that we review de novo.[5]

"The superior court has 'broad discretion in its determination of child

---

[3]    AS 25.24.150(c)(6).

[4]    35 P.3d 1, 9 (Alaska 2001).

[5]    *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000).

custody.' "[6] "We will not set aside the superior court's child custody determination 'unless its factual findings are clearly erroneous or unless it abused its discretion.' "[7] "We will find the trial court's underlying factual findings clearly erroneous only 'when our review of the entire record leaves us "with a definite and firm conviction that a mistake has been made." ' "[8] "The trial court's factual findings enjoy particular deference when they are based primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[9] "We will find that the trial court abused its discretion if it has considered improper factors, failed to consider relevant statutory factors, or assigned disproportionate weight to some factors while ignoring others."[10]

## IV.    DISCUSSION

Rowena argues that the superior court (1) denied her due process by concluding that grandparent involvement tipped the scales in favor of giving Dennis a greater share of custody; (2) abused its discretion by improperly weighing best interests factor six on the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child; and (3) abused its discretion by relying heavily on grandparent involvement as a factor favoring Dennis to determine its custody award.

We conclude that Rowena was not denied due process because our case

---

[6]    *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1200 (Alaska 2012) (quoting *Cusack v. Cusack*, 202 P.3d 1156, 1158-59 (Alaska 2009)).

[7]    *Id.* (quoting *Cusack*, 202 P.3d at 1159).

[8]    *Id.* (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

[9]    *Id.* (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)).

[10]   *Schmitz v. Schmitz*, 88 P.3d 1116, 1121 (Alaska 2004).

law, Dennis's witness list, and the factual circumstances of this case put her on notice that grandparent involvement might play a role in the court's custody determination and she had an opportunity to address this issue at the custody hearing. But we conclude the court improperly weighed a critical factor in this case, the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, while putting disproportionate weight on grandparent involvement. We therefore conclude that the court's 59/41 custody determination was an abuse of discretion; we reverse that determination and remand for proceedings consistent with this opinion.

### A.   The Superior Court's Reliance On Grandparent Involvement Did Not Deny Rowena Due Process.

Rowena argues that the issue of grandparent involvement was not raised in any proceeding until the superior court issued its decision and that she had "no notice by statute, case law, pleading, or testimony" that the issue of grandparent involvement would be raised, let alone prove decisive in the court's custody determination. While she recognizes that "due process in custody cases generally requires a hearing and little more," she asserts that when "new law is being created," there should be "some sort of advance notice given to the parents that the issue may be addressed." She contends that had she been on notice, "evidence could have been presented contradicting the [c]ourt's conclusion."

Custody modification proceedings implicate due process.[11] "Procedural due process under the Alaska Constitution requires 'notice and opportunity for hearing

---

[11]    *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998) ("The adequacy of the notice and hearing afforded a litigant in child custody proceedings involves due process considerations.").

appropriate to the nature of the case.' "[12] Specifically, "[i]t is essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination."[13]

Rowena was not denied due process in these circumstances. Contrary to Rowena's assertions, the custody modification statute and our case law make clear that extended family may play a role in a court's best interests determination. We explained in *Barrett v. Alguire* that best interests factor five on the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity can "encompass a multitude of factors, including, but not limited to, the relationship with the custodial parent, the home provided by the custodial parent, the children's school, *the community of friends and family*, the cultural community, and the children's relationship with the non-custodial parent."[14] Indeed, the "trial court's difficult task is to examine all of these factors and determine, in each case, which predominate."[15]

More specifically, we concluded in *Harris v. Governale* that the superior court did not err in finding that stability and continuity favored the father in part based on "the close bond [the child] had developed with her paternal grandparents in Alaska,

---

[12]     *Wright v. Black*, 856 P.2d 477, 480 (Alaska 1993) (quoting *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974)), *overruled on other grounds by B.E.B. v. R.L.B.*, 979 P.2d 514, 520 & n.47 (Alaska 1999).

[13]     *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983).

[14]     35 P.3d 1, 9 (Alaska 2001) (emphasis added).

[15]     *Id.*

a relationship the court believed it was important to continue."[16]  We concluded that "it was not unreasonable for the court to highlight the importance of the paternal grandparents given the evidence that they had a major role in caring for the child since her birth" and that we could not "say that the court clearly erred when it concluded that the interests of long-term stability and continuity favored the award of primary physical custody to [the father.]"[17]  Similarly, in *I.J.D. v. D.R.D.*, we upheld the trial court's determination that factor five weighed in the father's favor in part because the child's paternal grandparents were "actively involved in [the child's] care and, along with [the father's] extended family, w[ould] likely continue to provide a support network."[18]  Consequently, our decisions in these cases put Rowena on notice that extended family may play a role in a court's best interests analysis.[19]

Moreover, we typically identify due process violations in the custody context when a party has not had notice of the consequences of a particular hearing and lacked adequate time to prepare.  For example, in *Cushing v. Painter* we determined that the superior court erred in transforming, without notice, a hearing on a child's interim custody for the impending school year into one that decided permanent custody in favor of the father and in giving the mother only five days to prepare for the hearing.[20]  In *Debra P. v. Laurence S.* we concluded that it was a violation of due process "when the

---

[16]     311 P.3d 1052, 1056 (Alaska 2013).

[17]     *Id.*

[18]     961 P.2d 425, 430 (Alaska 1998).

[19]     *See Ferrell v. Baxter*, 484 P.2d 250, 265 (Alaska 1971) ("The general rule, to be applied in the vast majority of cases, remains that all [people] are presumed to know the law.").

[20]     666 P.2d 1044, 1046 (Alaska 1983).

superior court made a final custody and visitation decision after a hearing [that the mother] reasonably believed would resolve only interim custody and visitation issues."[21] And in *Lashbrook v. Lashbrook* we concluded that a parent's due process rights had been violated when a "domestic violence hearing was directed at an award of temporary custody for six months or less[,] . . . [n]either party was given notice that permanent custody was also at issue," and "the other eight factors specified in AS 25.24.150(c) . . . were not addressed."[22] Unlike these cases, Rowena clearly had notice that the January 2017 custody modification hearing would result in the permanent modification of the custody arrangement she had with Dennis, she had adequate time to prepare, and the court considered all statutory factors.

In addition, it was clear from the circumstances of this case that grandparent involvement was at issue. As the superior court noted, Dennis's custody modification hearing witness list included his father, Sally's grandfather.[23] Rowena argues that Dennis's witness list did not specify what the grandfather would testify to as required by a standing order issued by the superior court in the proceedings leading up to the parties' initial settlement agreement. But while Dennis failed to provide this information in his witness list, an opposing party's failure to strictly comply with a standing order does not by itself demonstrate that a court has denied the other party due process.[24] Given the fact

---

[21]    309 P.3d 1258, 1261 (Alaska 2013).

[22]    957 P.2d 326, 329 (Alaska 1998).

[23]    Rowena argues that we should not consider the witness list because Dennis "did not designate the 'witness list' as part of the transcript." But the witness list is part of the record on appeal, *see* Alaska R. App. P. 210(a), and Rowena offers no authority to support her contention that this court should not consider it.

[24]    *Cf. D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 213-14
(continued...)

that the grandfather was named on the witness list, the factual circumstances of the case, the custody modification statute, and our case law on the role of extended family in best interests determinations, we conclude that Rowena had adequate notice that grandparent involvement could be considered by the court.

Rowena also argues that because no evidence was presented relating to the connection between the child's involvement with her grandparents and the child's best interests, she had no opportunity to present countervailing evidence at trial. She suggests that she could not be expected to contend that the court overlooked or misconceived facts that were not presented to the trial court. But evidence relevant to the relationship between grandparent involvement and the child's best interests was presented at trial and Rowena was given the opportunity to respond. For example, Dennis testified that he and Sally spent a lot of time with his parents, that his daughter loves his mother, and that they all had dinner together once a week and brunch every Sunday. In addition, the grandfather testified that Sally came by after school two times a week and spent time with his other five grandchildren. Rowena's attorney was given the opportunity to cross-examine the grandfather but declined. He also declined to present further witnesses following the grandfather's testimony before moving to closing arguments. Thus, Rowena was given "the opportunity to present the quantum of evidence needed to make an informed and principled determination."[25] We conclude that Rowena was not denied due process.

---

[24] (...continued)
(Alaska 2000) (identifying no due process violation even though State failed to give advanced notice of heightened standard of proof).

[25] *Cushing*, 666 P.2d at 1046.

B.      **The 59/41 Custody Determination Was An Abuse Of Discretion.**

   1.      **It was an abuse of discretion to decide that best interests factor six was neutral.**

In a custody determination, the trial court must consider the "willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child" in determining the child's best interests.[26] Rowena argues that the superior court failed to properly consider that Dennis intentionally misled her about his not going back to work after he had been terminated. She argues that the court mentioned her allegation under factor six on the willingness and ability to facilitate a relationship between the child and the other parent, made no finding on the issue, went on to discuss issues unrelated to factor six, and then concluded that the factor was neutral. Rowena asserts that the court therefore improperly weighed factor six because it compared "apples and oranges" and failed to evaluate her allegation. We agree.

The court mentioned that "from [Rowena's] perspective, the father resisted her efforts to spend more time with [the child] after he returned and began exercising primary custody." But the court failed to evaluate this allegation despite the clear evidence supporting it. Dennis failed to tell Rowena he received a termination letter and might not be going back to work, despite the fact that whether he was on vacation or retired had obvious consequences for the court-approved settlement agreement governing custody. Dennis told Rowena not to question him about when he would return to work, and Dennis ultimately waited half a year after returning from overseas to finally mention in any concrete terms that he was not going back to work. From June until September, Dennis concealed his termination from Rowena and he allowed her only very limited

---

[26]      AS 25.24.150(c)(6).

visitation with their daughter: a lunch at McDonald's, an hour in the park, and a lake party constituted all of Rowena's physical visitation over a two-month period. In September Dennis started allowing Rowena occasional overnights with Sally, but he did not want to give Rowena too many overnights and lose his 50% child support credit. When Rowena approached Dennis about changing the custody arrangement and asked for more time with Sally, Dennis responded that if she wanted more than the weekends he was "giving her" she would have to file a motion with the court. In other words, Dennis abused the settlement agreement, kept Rowena in the dark, and deprived her of contact with Sally.

Instead of considering Rowena's argument and whether, on these facts, Dennis had resisted fostering the mother–child relationship, the court listed a few complaints Dennis had about Rowena's temperament around her daughter and Rowena's ability to help with homework and then concluded that the factor was neutral. It identified no behavior on Rowena's part indicating an unwillingness or inability to foster the father–child relationship — indeed the record indicates that she was good at fostering that relationship. Rowena kept photographs of Dennis for Sally during Dennis's months away, and she would coach Sally on who her father was. Rowena also agreed that Sally and Dennis should be together during the limited time Dennis was home from overseas.

This case bears some resemblance to the underlying facts in *Nancy M. v. John M.*[27] In that case, we upheld the trial court's determination that best interests factor six favored the father, who "had a strong track record of supporting [the mother's] relationship with [their child]," over the mother, who "never offered [the father] extra time with [the child]" and who "consistently, albeit subtly," worked to exclude the father

---

[27]    308 P.3d 1130 (Alaska 2013).

from the child's life.[28] Similarly, in *Blanton v. Yourkowski*, we upheld the trial court's determination that factor six favored the father where the mother was "consistently unwilling to foster a good relationship between the father and the child, . . . attempting to limit his time with the child and frustrating his efforts to see the child."[29] As with the fathers in those cases, the evidence here indicates that Rowena was more willing than Dennis to facilitate visitation between Sally and the other parent. It was abuse of discretion for the trial court not to consider Sally's arguments on this point.

Moreover, the court stated at trial that Dennis merely took advantage of a settlement agreement that "on its face appeared to give him . . . primary physical custody when he's back from overseas." This statement inexplicably contradicts the court's April 2016 order, wherein the court stated that Dennis's argument that the settlement agreement gave him full custody after he returned to Alaska permanently was "not in sync with the common meaning of the phrase 'weeks off from work overseas.' " The court did not explain why its view had changed, failed to analyze relevant facts in support of its determination, and thus failed to recognize that Dennis's behavior ultimately undermined the mother–child relationship. This was an abuse of discretion.

### 2. It was an abuse of discretion to assign disproportionate weight to grandparent involvement as a factor in Dennis's favor.

While ignoring Dennis's resistance to the mother–child relationship, the superior court found grandparent involvement to be the factor that "tip[ped] the scales." While we disagree with most of Rowena's arguments with regard to grandparent involvement, we conclude that the court weighted this issue disproportionately in Dennis's favor while failing, as we have already discussed, to recognize the importance

---

[28]     *Id.* at 1133, 1135.

[29]     180 P.3d 948, 950-52 (Alaska 2008).

of factor six in this case.[30]

First, Rowena asserts that the court relied on grandparent happiness rather than the child's best interests when considering this issue. This mischaracterizes the court's findings. While the court did state that the grandparents "enjoy having [their] grandchildren at their home, playing," the court went on to state that "[t]he significant *value to* [*Sally*] of regular contact with her paternal grandparents tip[ped] the scales in favor of the father."[31] Thus, the court was clearly linking grandparent involvement not to the grandparents' happiness, but to the child's best interests.

Second, Rowena argues that the court simply presumed grandparent involvement was in the child's best interests without any evidentiary support. While, as Rowena notes, we have previously rejected relying on an unsupported presumption — in *West v. West* we rejected an expressed preference for the benefits of a two-parent household "absent case-specific evidence"[32] — the superior court here did not rely on a similar impermissible presumption unsupported by evidence. Dennis testified that Sally had a good relationship with her grandmother, and Sally's grandfather testified that he and his wife thought highly of Sally, that they helped to ensure that she was able to engage in activities she liked, and that Sally was able to play with her cousins while in their care. Thus, the court did not rely on an impermissible unsupported assumption that grandparent involvement was in the child's best interests.

Third, Rowena argues that the superior court failed to acknowledge that

---

[30] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) ("Assigning disproportionate weight to particular factors while ignoring others is an abuse of discretion.").

[31] Emphasis added.

[32] 21 P.3d 838, 843 (Alaska 2001).

giving additional time with the father and thus with the paternal grandparents required taking time away from the mother. She argues that the court failed to determine that to do so was in the child's best interests. But the superior court's 59/41 custody determination itself reflects that increasing the share of custody of one parent results in a decrease in custody for the other parent. Moreover, the court's determination that grandparent involvement enhanced the value of Dennis's custody of Sally was made after the court recognized the love and affection existing between Sally and her mother, and the role Rowena had played in raising the child. This demonstrates the court understood that a custody award favoring the father with the partial aim of increasing or maintaining grandparent involvement came at the expense of time with the mother but determined that it was still in the child's best interests.

Notwithstanding these considerations, however, the court assigned disproportionate weight to grandparent involvement in Sally's life as a factor favoring Dennis. Alaska Statute 25.24.150(c)(5) requires the court in a child custody case to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." We have held that one aspect of this factor is the child's extended "community of friends and family," which may include the role of grandparents in the child's life.[33] But in the few cases where grandparent involvement was a substantial element of the stability factor, the record gave clear indications that the grandparents' role would depend on which parent had custody. In *Harris v. Governale*, for example, the mother had moved to Florida while the father still lived near the child's paternal grandparents in Alaska.[34] Similarly, our unpublished decision in *Johnson v.*

---

[33]     *Harris v. Governale*, 311 P.3d 1052, 1056 (Alaska 2013) (citing *Barrett v. Alguire*, 35 P.3d 1, 9 (Alaska 2001)).

[34]     *Id.* at 1054-56.

-18-                                          **7271**

*Smith* upheld the trial court's determination that stability favored the father where the mother moved to North Carolina but the father and the maternal grandparents and aunt remained in Anchorage.[35]

Here, Rowena argues that there was no evidence that Sally's contact with her grandparents would be limited while Rowena had custody, so it was purely speculative for the court to assume that securing grandparent involvement required giving a higher share of custody to Dennis. We agree. Not only did Rowena demonstrate her ability to foster the father–child relationship as previously discussed, but Sally's grandfather testified that when Dennis was out of town he and his wife worked with Rowena to provide care for Sally; for example, they brought Sally to basketball games and other activities. There is no evidence to suggest that Rowena impeded grandparent involvement with Sally. And when Dennis had custody of Sally, he was free to have Sally spend as much or as little of that time with her grandparents as he wished. Therefore, the court's substantial reliance on the theory it was in Sally's best interests to award a greater share of custody to Dennis in order to increase grandparent involvement assigned disproportionate weight to grandparent involvement through Dennis. This was an abuse of discretion. And because it was this consideration that "tip[ped] the scales" in favor of an unequal custody award favoring the father, the scales on remand should be returned to center, and the superior court can then adjust the balance from there as it reconsiders best interests factor six.

### 3. The court's additional findings do not justify an unequal custody arrangement.

Finally, the superior court made additional findings in response to Rowena's motion for reconsideration. It invoked the stability afforded by keeping Sally in the

---

[35]     *Johnson v. Smith,* No. S-9356, 2001 WL 34818271, at *4-5 (Alaska Oct. 24, 2001).

-19-                                                                                    **7271**

home where she grew up and Dennis's superior ability to maintain order while helping the child with school work as "subtle differences" that justified its unequal award. But these additional considerations do not neutralize the errors we have identified.[36] With respect to homework, Rowena testified that Sally sometimes did not want to do her homework and threw tantrums, and that she had to talk to Sally and tell her she "ha[d] to do it." Rowena's fiancé testified that Rowena and Sally may "go back and forth . . . a little bit" when doing homework, but that it went very well and was nothing out of the ordinary. In response, Dennis testified that Sally never threw tantrums when they did homework and stated: "[W]e don't do that type of thing in our house." This "subtle difference," using the superior court's phrase, does little to support the court's unequal custody determination in light of its failure to weigh Dennis's resistance to the mother–child relationship against him and its disproportionate reliance on paternal grandparent involvement. There was no evidence that Rowena's approach to helping Sally with her homework negatively affected Sally's school performance, so the most one could reasonably conclude from the parents' testimony is that Sally occasionally resisted doing her homework while with her mother.

Lastly, while considering the enhanced stability and continuity afforded a child by being able to remain in the home where she grew up can be appropriate, the superior court offered no analysis as to how a 59/41 custody determination achieves the benefit contemplated, given that it was Rowena who lived with Sally in the home for the

---

[36] *Cf. Vachon v. Pugliese*, 931 P.2d 371, 376-80, 382 (Alaska 1996) (determining that clearly erroneous factual findings regarding credibility had no effect on custody determination and were thus harmless, but reversing in part because errors with regard to custodial interference were "critical to the superior court's assessment of the statutory custody factors").

first six years of Sally's life while Dennis was overseas.[37]  And significantly, the court had previously found that the family home in which Sally had spent her infancy and the single family residence where Rowena and her fiancé lived both provided stable and satisfactory living arrangements.  Without more, the court's cursory statement regarding the family home in its response to a motion for reconsideration does not convince us that the unequal custody award here was within the range of discretion allowed the trial court.

As the court itself recognized, Sally "is in the enviable position of having two parents who love her, each of whom is capable and would love to parent her."  As we have explained before, "[t]he legislature has expressed a preference for joint legal custody."[38]  Because "[n]either parent . . . is entitled to preference in the awarding of custody,"[39] an order awarding a greater share of custody to one parent must be justified by the circumstances of the case.  Therefore, in situations where "[t]he statutory custody factors are generally even between the parents," as the court determined here, a 50/50 shared physical custody schedule is usually appropriate.  The court, however, did not appear to consider a 50/50 schedule as a starting point.  Instead it decided that "somewhere between the interim 70/30 and the 50/50 sought by the mother" would be appropriate and ended up at a 59/41 split.  In support, it assigned disproportionate weight to some factors with little analysis, while ignoring or improperly weighing key factors in the case.  On remand, the superior court must conduct a new best interests analysis and establish a custody arrangement consistent with this opinion.

---

[37]     *See Barrett,* 35 P.3d at 9 ("The trial court's consideration of the stability of the children's environment in a custody modification case can encompass a multitude of factors, including . . . the home provided by the custodial parent . . . .").

[38]     *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009) (citing *Farrell v. Farrell*, 819 P.2d 896, 898 n.1 (Alaska 1991); ch. 88, § 1(a), SLA 1982).

[39]     AS 25.20.060.

## V.    CONCLUSION

We REVERSE the superior court's physical custody decision and REMAND for further proceedings consistent with this opinion.