NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALENA POLEN, ) | |
| ) | Supreme Court No. S-18218 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-21-04059 CI |
| v. ) | |
| ) | <u>MEMORANDUM OPINION</u> |
| JACOB MILLER, ) | <u>AND JUDGMENT</u>* |
| ) | |
| Appellee. ) | No. 1947 – February 8, 2023 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Alena Polen, pro se, Anchorage, Appellant. Christopher Smith, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

A mother challenges the superior court's interim and final child custody orders. The mother and father initially reached an interim custody agreement, which gave the mother primary physical custody and the father visitation subject to certain conditions. This agreement included a mutual no-contact order. At a status hearing, the mother sought to withdraw from the agreement, alleging the father had previously engaged in domestic violence. The court maintained the custody and visitation terms that

---

\*     Entered under Alaska Appellate Rule 214.

the parties had agreed upon on an interim basis, but scheduled an evidentiary hearing to investigate the alleged domestic violence. After several evidentiary hearings, the court determined that neither parent had a history of domestic violence for purposes of triggering custody-and visitation-related presumptions. The court announced a final custody order after these hearings.

The mother appeals, arguing the superior court abused its discretion in enforcing the interim custody agreement and violated her due process rights when it issued the final custody order. We conclude that the mother's challenges to the interim orders are moot and the superior court's acceptance of the parties' stipulated mutual no-contact order was not an abuse of discretion. We further hold that the proceedings underlying the superior court's final custody order comported with due process, and we therefore affirm the final custody order.

## II. FACTS AND PROCEEDINGS

### A. The Parties Informally Shared Custody Of Their Child Until December 2020.

Alena Polen and Jacob Miller began a romantic relationship in 2016. In March 2017 they had a child together. Around the time Polen became pregnant Miller moved for work from Anchorage to Fairbanks, where he continued to reside after their child was born. Polen, who continued to live in Anchorage, was the child's primary caretaker. While in Fairbanks, Miller would call Polen "pretty much every day" and visit Anchorage to see Polen and their child. In 2018 Miller returned to Anchorage after suffering an on-the-job injury and lived with Polen and the child until 2020. The couple ended their relationship in May 2020.

After separating, Miller and Polen agreed to an informal shared custody schedule. According to Miller, the child would stay with him for "most evenings" but Polen would often "demand[] the child stay overnight with her." Polen agreed that the child most often stayed overnight with her.

In December 2020 the parents' disagreements about child custody escalated. Polen informed Miller that she planned to take the child to visit her family in North Carolina. Miller objected to the child traveling out of state due to the COVID-19 pandemic.

Later that month Polen and Miller were involved in a dispute at a local retail store. Miller claimed to have taken the child to the store to purchase sledding gear during his custodial time. Polen unexpectedly arrived at the store and demanded the child return with her. This led to Miller, Polen, and the child driving together to go sledding, until Polen jumped out of the moving vehicle with the child, to run back to the store and call the police. According to Miller, Polen never called the police; his then-fiancée did.

Polen recalled the incident differently. According to Polen, Miller had kept the child overnight against her wishes the day before. He then rescheduled Polen's pick up time for the next day and berated her for wanting to take the child to North Carolina. When it came time to pick up the child, Miller informed Polen that he would be taking the child to the store to get sledding gear and that Polen could meet them there. Once Polen arrived, she observed the child to be distraught, and Miller was verbally abusive towards her. Because the child did not want to leave without her, Polen and Miller decided to drive together to go sledding and while en route Polen described Miller as banging on the steering wheel and yelling. After asking Miller to stop, Polen took the child, got out of the car, and returned to the store to call the police.

**B.** **After Miller Filed For Custody, The Parents Reached An Interim Custody Agreement.**

In response to these incidents, Miller filed for primary physical and sole legal custody of the child in December 2020. He alleged that Polen committed custodial interference in "unilaterally" removing the child from Alaska for the trip to North Carolina and that she exposed the child to domestic violence in her home.

Polen responded to Miller's complaint and interim custody motion. She denied Miller's allegations of domestic violence. She alleged Miller committed several acts of domestic violence in February and March 2020, in addition to his angry behavior during the December 2020 store incident. Polen claimed that Miller was intoxicated during these incidents. She argued Miller "has a history of committing acts of domestic violence . . . such that the statutory presumption contained in AS 24.25.150(g) should apply." She therefore counterclaimed for primary physical and sole legal custody and argued that any visitation awarded to Miller should be supervised, in accordance with the statutory requirements. Polen was represented at this time.

Miller replied and denied Polen's allegations. He admitted hit[ting] a wall once but claimed "Polen wasn't even present in the room[,] and he fixed it after[wards]." He characterized the other allegations as "untrue or exaggerated stories with omissions." He voluntarily elected to enroll in "Soberlink" to document his sobriety and to put other unspecified measures in place to assure the child's safety while in his custody.

When the parents appeared in superior court for a late January 2021 status hearing, they indicated that they hoped to reach a settlement. At a February status hearing the parents announced their agreement to a "Stipulated Civil Rule 65 Mutual No-Contact Interim Custody Order." Polen's attorney entered the terms of the agreement on the record. Both parties and their attorneys signed the written stipulated order.

The interim custody agreement gave Polen primary custody and gave Miller

visitation subject to conditions. His visitation would occur every other weekend from Friday to Sunday evening; during off weeks, Miller had visitation on Thursday evening. At the end of the Thursday visits as well as three times during weekend visits, Miller had to complete Soberlink testing and share the results with Polen. Visitation would end for that period if Miller tested positive for alcohol. Miller also agreed to "enroll [in] and complete a state-approved 36-week DVIP [Domestic Violence Intervention Program] course."[1] But Miller told the court that he was not "acknowledging that he ha[d] committed any acts of domestic violence" and had only agreed to enroll "to address concerns." If Miller complied with the conditions for 30 days, he could seek increased visitation by agreement or court order.

The provisions of the mutual no-contact order applied to both parents and allowed for limited contact. The parents' communication was restricted to text messages or emails for "the purposes of discussing issues pertaining to [the child,]" absent an emergency. The parents were permitted to be in each other's presence during custody exchanges and to attend their child's "medical, dental, and/or counseling appointments." Neither parent was permitted to go to the other parent's home or place of employment absent advance written agreement to facilitate a custody exchange. Both parents also agreed to engage in "co-parent counseling with an agreed-upon counselor." The no-contact order was to "remain in full effect until further order of the Court."

---

[1] "DVIPs," or "Domestic Violence Intervention Programs," are also known in Alaska as Batterers Intervention Programs (BIPs) and provide education to promote behavioral changes for those who "want to change." ALASKA DEP'T OF PUBLIC SAFETY, *Services for Those Who Commit Acts of Domestic Violence*, https://dps.alaska.gov/ CDVSA/Services/ForThoseWhoCommitDV (last accessed Nov. 3, 2022).

Each parent verified the terms of the agreement on record and testified to entering the agreement knowingly, voluntarily, and in furtherance of the child's best interests.

A status hearing to review visitation was held March 3, 2021. At the hearing, Polen's lawyer asked the court not to allow an increase in visitation at that time. Miller had not yet been in compliance for 30 days, as he had not signed up for Soberlink until February 12. The court agreed, and maintained custody and visitation as it was. The court scheduled another status hearing for March 19.

### C. Polen Subsequently Raised The Domestic Violence Allegations As Reason Not To Enforce The Interim Agreement.

On March 17 Polen filed a "declaration" without the assistance of counsel, indicating that she no longer agreed with the interim agreement. She wanted the court to consider "the allegations of and evidence of domestic violence, both past and present," and to make "the appropriate findings . . . after an evidentiary hearing is conducted" as required under AS 25.24.150(g).[2] The next day Polen's attorney filed a notice of withdrawal from representing her in the matter.

On March 18 Miller filed a status update demonstrating his compliance with the interim custody agreement's conditions and asking for increased visitation. He characterized Polen's allegations of domestic violence as "additional false claims" meant to defeat his custodial rights and ability to have visitation with the child.

At the March 19 status hearing, the court granted Polen's lawyer's withdrawal. Polen therefore participated in the hearing without representation. Based

---

[2]     AS 25.24.150(g) creates a "rebuttable presumption" that a parent with a "history of perpetrating domestic violence against the other parent [or] child . . . may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."

on her "declaration" the court asked if her position was to "withdraw from this agreement," to which she answered "Yes" because it was "moving too fast," adding that it was her understanding that Miller needed to complete the 36-week DVIP course before increasing visitation. The court rejected this position because it interpreted the parents' agreement as having intended to allow Miller to "ask" for an increase in visitation after 30 days had elapsed, so long as he had completed testing during that period and begun the 36-week DVIP course.

The court determined that it would maintain the custody and visitation terms the parties had previously agreed on for the interim, but noted it was required to hold an evidentiary hearing and the court would "make findings about whether or not domestic violence occurred." Polen requested time to obtain new representation before the evidentiary hearing, which the court granted. The court scheduled the evidentiary hearing for June 2021 and another status hearing to address interim visitation in May.

Following the March 19 status hearing Polen filed additional motions, repeatedly requesting to withdraw from the interim custody agreement due to her allegations of domestic violence.

The parties reconvened in May. Miller again sought to increase visitation. Represented by new counsel, Polen objected to the increased visitation in light of the allegations of domestic violence. The court partially granted Miller's request.

**D.   The Court Held An Evidentiary Hearing.**

Although originally scheduled for one day, the parties' evidentiary hearing stretched across multiple days in June, July, and August due to the amount of testimony. At the outset of the first hearing day in June, the court announced multiple broad purposes of the hearing, including addressing "a future custody-visitation schedule,

allegations of domestic violence, and dispute over income for purposes of calculating child support." Both parties' counsel expressed understanding and agreement with those hearing objectives.

Miller testified and called several witnesses to discuss the parties' cross-allegations of domestic violence and other factors relating to the child's best interests. Polen's attorney cross-examined Miller.

During cross-examination, the court interjected to note that both attorneys had spent "an enormous amount of time on things that are years prior to the existing custody rules," which the court only permitted because part of it related to "issues of possible domestic violence," and that "even the behavior that is not domestic violence . . . that occurred prior to the order is probably relevant to a final order." The court explained that it "[did]n't see any reason why [the parties] should . . . do this twice." Polen's attorney expressed agreement. The court then instructed Polen's attorney to continue his line of questioning, which was unrelated to domestic violence.

When the hearing continued in July, both parties presented evidence. Miller called additional witnesses, including his wife. Polen began her case with her own testimony. At the next hearing day in August, Polen called her sisters and their longtime babysitter to testify about Miller's alleged acts of domestic violence and about other best interest factors favoring primary custody with Polen. The court stated it would make its decision on the record the next day.

**E. The Court Issued A Final Custody Order At The Conclusion Of The Evidentiary Hearing.**

The court made a decision on the record in August. The court first considered the best interest factors in AS 25.24.150(c),[3] making findings on: the child's

---

[3] AS 25.24.150(c) mandates that superior courts consider eight factors when
(continued...)

needs, Polen's role as the child's primary caretaker, each parent's unwillingness to facilitate the child's relationship with the other, Miller's prior history of abuse of alcohol and pain medication, and the parties' cross-allegations of domestic violence.

Next, the superior court made findings specific to domestic violence as contemplated by AS 25.24.150(g). The court found that Miller did not have "a history of perpetrating domestic violence" that would trigger the rebuttable presumption.[4] Considering "the testimony from various witnesses [describing] . . . several events," the court found that only one of the several incidents constituted domestic violence.[5] Therefore, the superior court concluded that "the presumption [was] not triggered." The court noted, however, that "even though the presumption isn't triggered, [it was] still obligated to consider that conduct" in the best interests analysis. The court similarly found that Miller had not proven a history of domestic violence on Polen's part.

Finally, the court determined that the best interests of the child warranted shared legal custody. But until Miller completed the DVIP course, Polen would retain

---

[3]     (...continued)
determining the best interests of the child, including: the child's needs, the parent's ability to meet those needs, the love between each parent and the child, the environment the child has lived in, the willingness of each parent to facilitate the child's relationship with the other, any history of domestic violence, and any history of substance abuse.

[4]     AS 25.24.150(h) provides, in part:

> A parent has a history of perpetrating domestic violence
> under (g) of this section if the court finds that, during one
> incident of domestic violence, the parent caused serious
> physical injury or the court finds that the parent has engaged
> in more than one incident of domestic violence.

[5]     AS 25.90.010 uses AS 18.66.990 to define "domestic violence" for Title 25, and the court found that only one of the incidents described met the statutory definitions. *See also Stephanie F. v. George C.*, 270 P.3d 737, 751 (Alaska 2012).

primary physical custody and Miller would maintain his visitation schedule. Once Miller completed the 36-week DVIP course, the parties would alternate custody on a weekly basis. Miller was required to abstain from alcohol when the child was staying with him. Later, the court issued a written final custody order memorializing the oral decision.

Polen filed this appeal, specifically contesting the court's enforcement of the parties' initial interim custody agreement.

## III.    STANDARD OF REVIEW

The superior court has "broad discretion in determining child custody."[6] We will "set aside" such custody determinations "only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion."[7] An abuse of discretion occurs if the superior court "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[8] We review decisions to grant a mutual no-contact order for abuse of discretion.[9]

" 'Whether there was a violation of [a parent's] right to due process is a question of law' that we review de novo."[10]

---

[6]    *Kristina B. v. Edward B.*, 329 P.3d 202, 207 (Alaska 2014).

[7]    *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

[8]    *Id.*; *see also Kristina B.*, 329 P.3d at 207 (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[9]    *Wee v. Eggener*, 225 P.3d 1120, 1126 n.21 (Alaska 2010) (citing *Cooper v. Cooper*, 144 P.3d 451, 454 (Alaska 2006)).

[10]    *Weathers v. Weathers*, 425 P.3d 131, 136 (Alaska 2018) (alteration in original) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000)).

## IV. DISCUSSION

### A. Polen's Challenge To The Superior Court's Interim Orders Is Moot.

Polen primarily challenges the superior court's interim custody orders, which relied, at least in part, on the parties' initial interim custody and visitation agreement. Her central argument is that the court should have first made findings under AS 25.24.150(g) to determine whether Miller had a history of perpetrating domestic violence before accepting the parties' interim agreement. The court has since held several evidentiary hearings regarding the parties' cross-allegations of domestic violence and the many other factors relevant to making a custody determination, and has issued a final custody order.

Only final judgments are subject to appeal as of right.[11] A final custody order "leaves nothing for the court to do but execute the judgment."[12] Interim custody decisions are not final judgments—they are temporary by definition.[13] Generally, interim custody decisions are considered moot after a final custody order has been entered.[14]

---

[11] Alaska R. App. P. 202(a) ("An appeal may be taken to the supreme court from a final judgment entered by the superior court.").

[12] *See Matanuska Maid, Inc. v. State*, 620 P.2d 182, 184 (Alaska 1980); *Nevitt v. Provost*, No. S-11339, 2005 WL 327219, at *2 (Alaska Feb. 9, 2005).

[13] *See e.g., Glasen v. Glasen*, 13 P.3d 719, 723 (Alaska 2000) ("[T]he separation decree was an interim rather than a final order."); *see also Bradley v. Bradley*, 32 P.3d 372, 372 n.4 (Alaska 2001) (mem.) ("Issues which seem important at intermediate stages in litigation may become insignificant or moot when the final judgment is entered.").

[14] *R.I. v. C.C.*, 9 P.3d 274, 278 (Alaska 2000) (determining that parent's challenge to interim custody order was moot because final custody already awarded); *see also Nevitt*, 2005 WL 327219, at *2 (explaining interim custody orders are not final appealable judgments and can be mooted by final judgment); *Frederico A. v. Francisca*
(continued...)

Once a final custody order has been entered, the parent is "entitled to no relief" from the interim decision because the final order supercedes the prior interim order.[15] Here, the superior court's final custody order supercedes its prior interim orders such that Polen's challenges to the interim orders are moot.[16]

Additionally, Polen has not challenged the substance of the superior court's final custody order except to suggest that the court somehow deferred to the initial interim agreement in making its final order. We find no support for that assertion in the record. The superior court heard evidence during the multi-day hearing and made findings on the parties' dueling allegations of domestic violence and the other best interest factors. The court ultimately determined that neither party had a history of perpetrating domestic violence that would trigger the presumption under AS 25.24.150(g). The final order is supported by testimony offered throughout the evidentiary hearings; the order does not incorporate the stipulated agreement, as the interim orders did.

## B. The Court Did Not Abuse Its Discretion By Accepting The Parties' Agreed-Upon No-Contact Provisions.

Polen also argues that the court abused its discretion by enforcing the mutual no-contact order that both parents had agreed to, contending that there was no

---

[14]    (...continued)
*A.*, No. S-15677, 2016 WL 7494854, at *5 (Alaska Dec. 28, 2016) ("[A] ruling in [the father's] favor on this interim custody issue would afford him no relief from the final custody order which he now appeals.").

[15]    *R.I.*, 9 P.3d at 278.

[16]    *See id.* Polen makes other challenges to the interim custody order. She argues that the court either abused its discretion or erred in other ways: by delegating enforcement of the agreement to her, by approving the agreement before it was reduced to writing, and by unilaterally modifying the agreement. These challenges are also moot.

basis for the order to be made against her. Based upon the record before us, it appears that as of the filing of this appeal, the no-contact order remained in place; the challenge therefore is not moot and we address the merits.[17]

"We have held that in appropriate circumstances trial courts may issue no[-]contact orders under their 'inherent equitable powers.' "[18] We have also held that to impose a mutual no-contact order "an independent basis for the order must exist with respect to each party."[19] An expression of concern or acknowledgment of animosity is insufficient to establish an independent basis for a mutual no-contact order; there must be a more specific factual basis.[20]

Two aspects of the no-contact order at issue support the superior court's approval of the order. First, the court entered the no-contact order after both parties knowingly and voluntarily agreed that it was appropriate to do so.[21] Second, regardless of the parties' agreement, the record in this case provided an independent basis for making an order with respect to Polen. These parties made detailed allegations of domestic violence against each other, including Polen's taking the child out of the state

---

[17] The agreed-upon No-Contact Order provided that it "shall remain in full effect until further order of the Court or agreement of the parties." The court adopted and amended the custody part of the stipulated agreement in interim custody orders, but, as far as we can tell from the record, did not alter or amend the stipulated no-contact order.

[18] *Wee v. Eggener*, 225 P.3d 1120, 1126 n.21 (Alaska 2010) (quoting *Siggelkow v. State*, 731 P.2d 57, 61 (Alaska 1987)).

[19] *Id.* at 1127.

[20] *Cooper v. Cooper*, 144 P.3d 451, 459 (Alaska 2006).

[21] *Cf. Limeres v. Limeres*, 320 P.3d 291, 298-99 (Alaska 2014) (noting that stipulated mutual no-contact order supported finding that parties had difficulties communicating).

against Miller's expressed wishes and the conflict in the local retail store. Although the court did not find that either party had a history of domestic violence for purposes of triggering custody-or visitation-related presumptions, the parties' allegations and testimony provide a basis for limiting their contact with each other.

Given the evidence supporting the parties' extreme difficulties in communicating, which rise beyond a mere expression of concern,[22] the superior court did not abuse its discretion in accepting and adopting the parties' mutual no-contact order.

**C.     The Superior Court Did Not Deny Polen Due Process.**

Finally Polen argues that the superior court violated her due process rights by modifying the interim custody agreement without "giving her the opportunity to be heard" at the March 19 hearing, and also by failing to notify her that the hearing held from June through August was "in fact the final custody hearing." Miller contends that the record demonstrates Polen had adequate notice and ample opportunity to present her evidence and arguments throughout the proceedings. We conclude that Polen was afforded due process throughout the custody proceedings.

"Procedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case."[23] "Specifically, '[i]t is essential to contested custody proceedings that the parties be afforded a hearing which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination.' "[24] The due process inquiry is generally

---

[22]     *Cooper*, 144 P.3d at 459.

[23]     *Regina C. v. Michael C.*, 440 P.3d 199, 203 (Alaska 2019).

[24]     *Weathers v. Weathers,* 425 P.3d 131, 137 (Alaska 2018) (alteration in original) (quoting *Cushing v. Painter*, 666 P.2d 1044, 1046 (Alaska 1983)).

factually intensive and requires review of circumstances specific to the individual case.[25]

In the custody context, "we typically identify due process violations . . . when a party has not had notice of the consequences of a particular hearing and lacked adequate time to prepare."[26] For custody determinations, the superior court must make the purpose of the hearing clear at the outset and the hearing must be of sufficient duration so that each party has an opportunity to present evidence and rebuttal testimony.[27] A final custody determination must provide the parties the opportunity to present evidence on all of the best interest factors used in making a final custody order.[28]

As to Polen's first argument, no aspect of the March 19 hearing violated Polen's right to be heard. That hearing was scheduled at Polen's request; during the prior hearing she had asked the court to wait to revisit Miller's visitation until after "30 days" had passed under their stipulated custody agreement. On March 19 the court heard Polen's objection to Miller's request for an increase in visitation, as well as her request

---

[25] *Cushing*, 666 P.2d at 1045-46, 1046 n.10 ("Review of the record persuades us that in the particular circumstances of this case the proceeding which was held did not afford basic fairness to the appellant."); *see also Weathers*, 425 P.3d at 138 (determining due process claim on "factual circumstances of the case").

[26] *Weathers*, 425 P.3d at 138; *see also Debra P. v. Laurence S.*, 309 P.3d 1258, 1261 (Alaska 2013).

[27] *See Cushing*, 666 P.2d at 1046 (holding that parent "[a]cting under the impression" that expedited hearing would "determine solely the question of interim custody" for the school year lacked adequate time to prepare and make her case); *Debra P.*, 309 P.3d at 1261 (concluding that self-represented parent was denied due process, when she expressed confusion at hearing and did not understand that interim custody hearing would become final custody hearing).

[28] *Lashbrook v. Lashbrook*, 957 P.2d 326, 329-30 (Alaska 1998) (vacating custody order when the only hearing that would satisfy due process right to be heard focused exclusively on domestic violence and did not address other best interest factors).

to withdraw from the agreement because things were "moving too fast." The court ultimately rejected Polen's objection and granted Miller's request for increased visitation pending the anticipated evidentiary hearing. A decision in Miller's favor, however, did not deprive Polen of either notice or the opportunity to be heard on whether increased interim visitation was appropriate.

As to Polen's second argument, we conclude she had sufficient notice that the June through August evidentiary hearing would lead to a final custody order. The court announced the broad purposes of the hearing at the outset, and Polen's attorney did not object. The court reiterated, and Polen's attorney voiced understanding, that the parties would not go through the hearing process a second time in determining a final custody order. Polen and her attorney were present when the court issued its oral findings and did not object at that time to a final order. We also note that following the court's announcement of its final custody order, Polen moved for reconsideration on multiple grounds, but never claimed to have been surprised by or unprepared for the court's announcement of a final custody order.[29]

Polen also had a full opportunity to present her case regarding all aspects of the custody determination. She was represented by counsel throughout the involved evidentiary hearings. The court repeatedly extended the hearing to accommodate the parties' extensive testimony and questioning.[30] Polen and her witnesses testified not only about issues of domestic violence, but also about the child's best interests, including the

_____

[29]    *See Debra P.*, 309 P.3d at 1261 (finding that raising concerns about purpose of hearing in motion for reconsideration and confusion at hearing indicated lack of notice).

[30]    *See id.* at 1260-61 (finding superior court's insistence on completing hearing that day, after mother indicated she was unprepared for a trial and confused about the purpose, probative of due process violation).

child's physical, educational and religious needs, each party's respective capability and desire to meet those needs, her loving relationship with her child, and the stability and continuity of living in her home.[31] She cross-examined Miller's witnesses on issues related to domestic violence and on other best interest factors.[32] During Polen's cross-examination of Miller, the court asked the parents to keep their testimony focused, but specifically permitted evidence about "past conduct" that was not domestic violence because it would be relevant to a final order. In making the final custody determination, the superior court considered all statutory factors and evidence presented.[33]

This record demonstrates that Polen and her counsel understood the scope of the evidentiary hearing and had a full opportunity to prepare and present her case. We therefore reject Polen's due process challenges.

## V. CONCLUSION

We AFFIRM the superior court's final custody order and acceptance of the parties' stipulated no-contact order. We decline to further address Polen's claims regarding the parties' interim agreement and the court's interim custody orders because they are moot.

---

[31] *See Weathers*, 425 P.3d at 138-139 (holding that superior court comported with due process where parent had opportunity to present evidence on how child's relationship with grandparents affected child's best interests but declined to do so).

[32] *See Cushing*, 666 P.2d at 1046 (considering parent's failure to put on rebuttal testimony, where parent did so under the impression hearing was limited to determining child's school, indicative of due process violation).

[33] *See Weathers*, 425 P.3d at 137-38 (finding no due process violation where, unlike other cases, the court considered all statutory factors in its decision).